In the Matter of Robert J. ARTHUR and Ethel Mae Arthur, Debtors.

**Bankruptcy No. GL 87–02052.**

United States Bankruptcy Court, W.D. Michigan.

April 12, 1988.

Marshall A. Yee, Grand Ledge, Mich., for debtors.

Peter A. Teholiz, Lansing, Mich., for Federal Land Bank of St. Paul and Production Credit Ass'n of Mid–Michigan.

MEMORANDUM OPINION REGARDING PRODUCTION CREDIT ASSOCIATION OF MID–MICHIGAN AND FEDERAL LAND BANK OF ST. PAUL STOCK

JAMES D. GREGG, Bankruptcy Judge.

This Court must decide the treatment of the respective claims held by the Federal

Land Bank of St. Paul ("FLB") and the Production Credit Association of Mid-Michigan, f/k/a Production Credit Association of Lansing ("PCA") with regard to certain stock owned by the Debtors which is subject to liens held by the PCA and the FLB. Pursuant to a previous confirmation hearing, the Debtors' Chapter 12 Plan has been confirmed and all issues have been resolved except for the remaining stock issue.

Robert J. Arthur and Ethel Mae Arthur, husband and wife, filed their Voluntary Petition Under Chapter 12 of the Bankruptcy Code[1] on July 6, 1987. The Debtors own and operate a cattle and crop farm in Laingsburg, Michigan. The Debtors' farming operation commenced in 1971. Mr. Arthur supplements his farm income by cutting wood and through employment at Consumers Power Company.

On August 4, 1987, the PCA filed its claim, as a secured creditor, in connection with the case. As of the filing date, the principal indebtedness claimed was $77,327.42. Accrued interest totaled $14,751.42. The amount of the unpaid indebtedness owed with respect to the PCA stock was $8,595.00. The total indebtedness claimed was $100,673.84.

On August 4, 1987, the FLB also filed its claim, as a secured creditor. The principal indebtedness claimed was $354,838.44. Accrued interest claimed was $82,386.72. The unpaid indebtedness with respect to the FLB stock was $18,750.00. The total indebtedness asserted by the FLB was $455,975.16.

In accordance with 11 U.S.C. § 1221, the Debtors were required to file their Chapter 12 plan on or before October 4, 1987. On September 28, 1987, pursuant to motion and a determination that substantial justification existed, the Court granted a 30-day extension to the Debtors for the time period to file their plan. On November 3, 1987, the Debtors timely filed their plan.

On November 13, 1987, the PCA and the FLB each objected to confirmation of the Debtors' Plan of Reorganization on numerous grounds. One of the PCA's objections was "the Plan fails to deal with the Debtors' PCA stock which cannot be retired as part of a Plan of Reorganization." One of the FLB's objections was "the Plan fails to deal with the Debtors' Farm Credit Stock, which cannot be retired as part of a Plan of Reorganization." On November 23, at the first scheduled confirmation hearing, all objections raised, including objections filed by other creditors, were preliminarily considered by the Court. Because of the Court's schedule and the number of objections interposed, the confirmation hearing was adjourned until December 22, 1987, with one-half day reserved for testimony and argument respecting confirmation of the plan. At the adjourned confirmation hearing, the Court was advised that all confirmation issues had been settled by the Debtors and the respective parties except for the issue relating to the treatment of the PCA stock and FLB stock under the plan. In the stipulations regarding the treatment of the PCA and the FLB allowed claims under the Debtors' confirmed Plan, it was agreed "[t]he treatment of the Debtors' PCA [and FLB] stock shall be in accordance with an Order of the Court to be issued in the future."

Because the Chapter 12 trustee desired additional time to review the stipulations by and between the Debtors and the various secured parties, the confirmation hearing was again adjourned until December 28, 1987. On that date, the Court determined that the Debtors' plan, as amended, was feasible and met all other requirements set forth in 11 U.S.C. § 1225. In accordance with the stipulations between the Debtors, the PCA and the FLB, the Court took the stock issue under advisement.

At the December 22, 1987 confirmation hearing, the PCA and the FLB argued, pursuant to the Farm Credit Act of 1971, as amended, 12 U.S.C. §§ 2001–2275a (hereinafter the "Farm Credit Act"), that the ownership of stock by member-borrowers makes the Farm Credit System responsive to its members. The Farm Credit Act man-

---

1. The Bankruptcy Code, as amended, is contained in 11 U.S.C. §§ 101–1330.

dates that each Farm Credit System institution retain a lien in the borrower's stock to secure repayment of the principal indebtedness and interest charges with respect to the stock. The Farm Credit System also raises capital by its member-borrowers paying interest on unpaid stock obligations. It was further argued that the Debtors cannot force the FLB or the PCA to retire stock in the context of a bankruptcy reorganization process. The gist of the PCA's and the FLB's argument is that a Chapter 12 Plan cannot modify the obligations of the debtor to pay for the stock and any interest accruing on that unpaid obligation. It is asserted a debtor must make principal and interest payments regarding the stock notwithstanding any provisions contained in Chapter 12 of the Bankruptcy Code.

At the December 22, 1987 hearing, the Debtors argued that they were compelled to purchase and maintain stock as a condition to borrow money from the PCA and the FLB. The Debtors received no actual stock certificates and they are unable to sell or transfer the stock. They must pay continuing interest on their stock obligation. The Debtors asserted that the issue is not *retirement* of the stock, but rather the *value* of the stock. Therefore, the Debtors aver they may surrender the stock to the PCA and the FLB to fully satisfy those entities' respective secured claims with regard to the stock obligation. The Debtors are willing to give up any rights to participate, by voting or otherwise, in the Farm Credit System, but will repay the debt to the PCA and FLB, secured by the real estate and personal property collateral, under their confirmed plan. The gravamen of the Debtors' argument is that they may surrender the stock to the PCA and the FLB in full satisfaction of their secured claims respecting the stock. Alternatively, the Debtors assert that their stock has absolutely no value.

After hearing argument of counsel, the Court requested that testimony be elicited regarding the facts involved in this case. The Court also requested that the parties

file memoranda setting forth their legal positions. The Court therefore continued the hearing until January 25, 1988 to hear testimony and allow time for preparation of legal memoranda.

The PCA and the FLB are governed by the Farm Credit Act.[2] The federal land bank generally makes long-term loans to farmers which are secured by first mortgages on real property. 12 U.S.C. § 2017 and § 2018. These loans are administered and serviced by regional federal land bank associations. 12 U.S.C. § 2020. As a condition to borrow money, the farmer-borrower is required to purchase a certain amount of stock from the regional federal land bank association. The regional association then must purchase the same amount of stock in the federal land bank. 12 U.S.C. § 2034. A lien is retained on the stock to secure repayment of the purchase price. 12 U.S.C. § 2054.

The production credit association was created to make short-term or intermediate-term loans to farmers. 12 U.S.C. § 2096. When a borrower receives a loan from the production credit association, the borrower is also required to purchase a specified amount of stock in the production credit association. Similar to the federal land bank, the production credit association is required to purchase stock in a regional federal intermediate bank sufficient to capitalize its loans. 12 U.S.C. § 2073. As is the case with the federal land bank, the production credit association retains a lien on its stock to secure repayment of the purchase price. 12 U.S.C. §§ 2073 and 2094.

At the hearing on January 25, 1988, the Court heard testimony from Larry Ackerson, Director of Special Credit for the Farm Credit Services of Mid–Michigan. He testified that the purposes of the stock requirements of the PCA and FLB were to capitalize the Farm Credit System, to produce interest income for the PCA and the FLB, and to give borrowers participation and voting rights with regard to the PCA and the FLB. *See, United States v. Mississip-*

---

**2.** On January 6, 1988, Congress enacted the Agricultural Credit Act of 1987, Pub.L. No. 100–233 (1988). This new Act provides for assistance to the Farm Credit System.

*pi Chemical Corp.*, 405 U.S. 298, 92 S.Ct. 908, 31 L.Ed.2d 217 (1972). Mr. Ackerson further testified that stock ownership cannot exist independently of the lender-borrower relationship and no actual stock certificates are issued to the farmer-borrower. The farmer-borrower cannot sell, transfer, pledge, or give away the stock. The farmer-borrower has the right to cast one vote pursuant to his stock ownership regardless of the amount owed on the stock obligation.

According to Mr. Ackerson, with regard to PCA stock, the farmer must purchase stock in the amount of approximately ten percent of the loan amount. Interest is paid by the farmer on the unpaid stock obligation and the PCA retains a lien pursuant to statute. As the loan indebtedness is repaid, the stock is correspondingly retired and the required interest payments respecting the unpaid stock obligation are concomitantly reduced. The board of directors has the discretionary power to make decisions to retire stock; however, if the PCA's capital is impaired, the stock may not be retired.

Mr. Ackerson further testified that the procedures with respect to borrowing from the FLB, and the attendant requirement that stock be purchased, is similar to the PCA. The principal difference is that the farmer-borrower must only buy stock in the amount of approximately five percent of the loan amount.

Mr. Robert J. Arthur, one of the debtors, also testified. He is a farmer-borrower who obtained two loans from the PCA and one loan from the FLB. He first learned that he was required to purchase stock from PCA and FLB at the loan closings. He stated no one explained the regulations regarding the retirement of stock.[3] To Mr. Arthur's knowledge, he has never cast any vote as permitted by the stock and could only recall one occasion when he received a

proxy with regard to his voting rights. Mr. Arthur believes that the stock has absolutely no value to him and asserts the stock is totally worthless. He is willing to surrender the stock to the PCA and the FLB forthwith in connection with the Debtors' confirmed plan.

11 U.S.C. § 1222(b)(8) states:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(8) provide for the sale of all or any part of the property of the estate or the distribution of all or any part of the property of the estate among those having an interest in such property;

11 U.S.C. § 1225(a)(5)(C) states:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . . .

(C) the debtor surrenders the property securing such claim to such holder; and

12 U.S.C. § 2094(k) states:

In any case where the debt of a borrower is in default, the association may retire all or part of the capital investments in the association held by such debtor at the book value thereof, not exceeding par or face amount, as the case may be, in total or partial liquidation of the debt, on written notice to the borrower and approval by the bank of such retirement.

12 U.S.C. § 2034(a) states:

The shares of stock in each Federal land bank association shall have a par value of $5 each. No person but borrowers from the bank shall become members and stockholders of the association. If an application for membership is approved and if the applied-for loan is

---

3. The Loan Application (Defendant's Exhibit A) is an application by the Debtors for credit to be extended and *"to purchase the PCA stock or Participation Certificates required."* Also in an Application Addendum Borrower Stock Agreement the Debtors agreed to pay for PCA stock up to 10 percent of the gross amount of any PCA

loan and up to 5 percent of the gross amount of any FLB loan. Both of the above-mentioned documents were signed by the Debtors. Therefore, the Court finds the Debtors knew of the stock purchase requirements at the closing of the loan transactions.

granted, the member of the association shall subscribe to stock in the association in an amount not less than 5 per centum nor more than 10 per centum of the face amount of the loan as determined by the bank. Stock shall be paid for in cash by the time the loan is closed. The association shall then purchase a similar amount of stock in the land bank. Stock shall be retired and paid at book value not to exceed par, as determined by the association, upon the full repayment of the loan and if the loan is in default may be canceled for application on the loan, or under other circumstances, for other disposition, when approved by the bank. The aggregate capital stock of each association shall be increased from time to time as necessary to permit the securing of requested loans from the bank for the association's members and on written notice to the stockholders.

The PCA and FLB argue that the above-quoted provisions of Title 12 should prevail and govern over the above-quoted provisions of Title 11. The Debtors argue to the contrary.

The statutes should be construed to avoid conflict. *In re Jenkins*, 58 B.R. 702 (Bankr.W.D.Mich 1986), *aff'd sub nom. Michigan Employment Sec. Comm'n v. Jenkins*, 64 B.R. 195 (W.D.Mich 1986). This Court believes the statutes do not conflict. 11 U.S.C. § 1222(b)(8) and § 1225(a)(5)(C) give additional rights to Chapter 12 debtors, including the right to surrender collateral to a secured creditor. Even if the provisions of Title 11 and Title 12 conflict, this Court believes that Title 11 should take precedence.

Chapter 12 is "designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and to keep their land." H.R.Rep. No. 99-958, 99th Cong., 2d Sess. 48 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5249. It is emergency legislation which suspends a number of creditor protections which are available in chapter 11 to facilitate family farmer reorganization. The essence of chapter 12 reorganization is the debtor's ability to deal with secured claims. In that regard, the debtor

has great flexibility and many options. One method is found in 11 U.S.C. § 1222(b)(8) which states that a chapter 12 plan may "provide for the sale of all or any part of the property of the estate *or the distribution of all or any part of the property of the estate among those having an interest* in such property" (emphasis added). Furthermore, surrender of property securing a claim to the holder of the secured claim is specifically recognized in the chapter 12 confirmation requirements of 11 U.S.C. § 1225(a)(5)(C) as a proper way to treat a secured claim. A debtor's ability to return land bank or production credit association stock to land banks and production credit associations to satisfy or reduce secured claims should not be frustrated by the Farm Credit Act of 1971.

*In re Massengill*, 73 B.R. 1008, 1012 (Bankr.E.D.N.C.1987) (emphasis as in text) (footnotes omitted).

The FLB and the PCA assert they cannot be compelled to retire the Debtors' stock relying upon *In re Walker*, 48 B.R. 668 (Bankr.D.S.D.1985) and *In re Cooperativa Cafeteros de Puerto Rico*, 19 B.R. 732 (Bankr.D.P.R.1982). They also assert that farm credit stock is a unique item which is totally different from other types of collateral and the "building block" upon which the Farm Credit System is established. Therefore, they conclude the stock cannot exist separately or apart from the underlying loan obligation.

In *In re Walker*, a Chapter 11 case, that court stated it would not construe 11 U.S.C. § 1129, the Chapter 11 confirmation section, to permit the debtor to force *retirement* or *cancellation* of PCA stock. *Accord, In re Foss*, 76 B.R. 719 (Bankr.D.N.D.1987) (Chapter 11 case). Similarly, in *In re Cooperativa Cafeteros de Puerto Rico*, a Chapter 7 case, the court stated the trustee had "no right to demand that the stock be retired." In this case, the Debtors are *not* demanding the stock be retired, redeemed or cancelled. These Debtors believe the stock is without any value and they are willing to surrender the stock to the PCA and the FLB. Under 11 U.S.C.

§ 1222(b)(8) and 11 U.S.C. § 1225(a)(5)(C), the respective stock in which the FLB and the PCA has an interest can be distributed or surrendered to them under the confirmed plan. This action is permissible and comports with the requirements, purpose, and spirit of Chapter 12 of the Bankruptcy Code.

In great part, this Court believes that Judge Small's rationale in *In re Massengill,* a Chapter 12 case, is sound, and pursuant to the facts in this case, much more persuasive than *In re Walker.* However, this Court declines to now determine the value, if any, of the FLB and the PCA stock. As previously noted, there has been testimony that the stock is worthless.[4] Surrender of the stock to the PCA and the FLB will relegate their allowed claims regarding the stock from secured to unsecured claims in the respective amounts of $8,595.00 and $18,750.00. However, if either the PCA or the FLB subsequently receives value from the stock surrendered, they shall apply any money received to reduce their respective unsecured claims in connection with this case.

An order shall be entered accordingly.

---

**4.** The Court believes that the Debtors have no equity in the stock. The amount owed by the Debtors appears to be greater than the value, if any, of the stock. In the *Massengill* case, it appeared the debtor had equity in the stock and that court therefore required that the value received by the FLB and the PCA be applied to the secured debt with regard to the other nonstock collateral.