**In re David Rockne CANSLER, Judith Lynn Cansler, Charles Mont Cooper, Nancy Charlotte Cooper, Mullins & Mullins Farms, Inc., Randall W. Mullins, Wanda S. Mullins, Richard Mullins, Mayfair Mullins, Kentucky Farms, Inc., Harold Don Allen, Aiko N. Allen, Jerry Joseph Gresham, Jean P. Gresham, Debtors.**

**Nos. C–88–0232P(J), C–88–0236P(J), C–88–0235P(J), C–88–0233P(J), C–88–0234P(J), C–88–0270P(J), C–88–0276P(J), and C–88–0237P(J).**

United States District Court,
W.D. Kentucky,
Paducah Division.

March 24, 1989.

Merritt S. Deitz, Jr., Sebree, Ky., for petitioner.

Harry L. Mathison, Henderson, Ky., for Federal Land Bank.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

The Federal Land Bank of Louisville ("Land Bank") brings these consolidated

appeals from Bankruptcy Court pursuant to 28 U.S.C. § 158(a) (1988). The appeals present two questions: (1) whether a debtor may surrender its stock in a Federal Land Bank for a corresponding decrease in his indebtedness, and (2) whether the Bankruptcy Court applied the proper interest rate to the loans outstanding.

### I.

All the debtors above have instituted bankruptcy proceedings under Chapter 12 of the Bankruptcy Reform Act, 11 U.S.C. § 1201 *et seq.* (1986). The plans confirmed in the bankruptcy court provided for the debtors to return Land Bank stock in exchange for a corresponding offset in their debt to the Land Bank.

The Federal Land Bank and regional land bank associations are governed by the Farm Credit Act, 12 U.S.C. § 2001 *et seq.* (1984). They are designed to provide long-term credit to farmers through their own cooperative efforts. *United States v. Mississippi Chemical Corp.*, 405 U.S. 298, 302, 92 S.Ct. 908, 911, 31 L.Ed.2d 217 (1972). Under the Farm Credit Act, borrowers from the Land Bank are required to purchase stock in the Land Bank in an amount between five and ten percent of the amount of the loan. The Land Bank finances the purchase of the stock. Each share of stock has a par value of five dollars, and no person except a Land Bank borrower is permitted to own stock. The stock may be redeemed when the loan is repaid in full. 12 U.S.C. § 2034(a) (1988). The system is ostensibly designed to make the credit associations responsive to its members and ensure a constant supply of capital.

Congress added Chapter 12 to the Bankruptcy Code in 1986 to deal with the growing credit crisis for owners of small farms.

Chapter 12 grants protection to family farmers by eliminating the absolute priority rule, allowing secured claims to be reduced to the value of the property secured, and by otherwise allowing greater freedom to restructure the debtor's obligations. In this way "Chapter 12 is 'designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land.'" *In re Massengill*, 73 B.R. 1008, 1012 (Bankr.E.D.N.C.1987), quoting H.R.Rep. No. 99–958, 99th Cong., 2d Sess. 48 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5249.

The debtors contend that the stock may be properly surrendered to the Land Bank as secured party under 11 U.S.C. § 1225(a)(5)(C) (1986). That statute specifically authorizes a plan to be confirmed if "the debtor surrenders the property securing such claim to such holder...." In the alternative, the debtors assert that the stock has no value to them and therefore should be abandoned under 11 U.S.C. § 554(a) (1988).[1]

The Land Bank argues that the Farm Credit Act forbids the cancellation of Land Bank stock. Section 2094(k) of 12 U.S.C. provides:

> In any case where the debt of a borrower is in default, the association may retire all or part of the capital investments in the association held by such debtor at the book value thereof, not exceeding par or face amount, as the case may be, in total or partial liquidation of the debt.[2]

Further, 12 C.F.R. § 615.5260(b) provides that "the bank may, but shall not be required to, retire and cancel all or part of any stock ... on which the bank has a lien as collateral for the debt...." Therefore, argues the Land Bank, the plan is forbid-

---

1. Indeed, the stock pays no dividends and has limited transfer rights. The Land Bank argues the stock has value because it allows the stockholders to borrow from the Land Bank and because the stockholders are allowed certain voting privileges.

2. In addition, Section 2202b(a) of 12 U.S.C., effective January 1, 1988, provides:
   If a Federal land bank forgives and writes off, under section 4.14A [12 U.S.C. 2202a], any of

the principal outstanding on a loan made to any borrower, the Federal land bank association of which the borrower is a member and stockholder shall cancel the same dollar amount of borrower stock held by the borrower in respect of the loan, up to the total amount of such stock, and the Federal land bank shall retire an equal amount of stock owned by the Federal land bank association.

den by law and cannot be confirmed. 11 U.S.C. § 1225(a)(3) (1986).

## II.

In *In re Massengill,* 73 B.R. 1008, 1012 (Bankr.E.D.N.C.1987), the Bankruptcy Court faced a similar conflict between debtor and land bank, between Bankruptcy Code and Farm Credit Act. That court held that the statutes conflicted, and the Bankruptcy Code took precedence over the other statute. The district court reversed, holding that when two statutes seem to conflict, the more specific statute controls.

Nevertheless, bankruptcy courts across the country have followed the *Massengill* bankruptcy court. *E.g., In re Neff,* 89 B.R. 672 (Bankr.S.D.Ohio 1988); *In re Ivy,* 86 B.R. 623 (Bankr.W.D.Mo.1988); *In re Arthur,* 86 B.R. 98 (Bankr.W.D.Mich.1988); *In re Indreland,* 77 B.R. 268 (Bankr.D. Mon.1987).[3]

In *In re Greseth,* 78 B.R. 936 (D.Minn. 1987), the district court upheld the bankruptcy court's plan allowing stock surrender. The court relied on *N.L.R.B. v. Bildisco,* 465 U.S. 513, 534, 104 S.Ct. 1188, 1200, 79 L.Ed.2d 482 (1984), and *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 710–11, 83 L.Ed.2d 649 (1985), to support the rights of a debtor in bankruptcy, "even in the face of strong contrary public policies...." *In re Greseth,* 78 B.R. at 943.

The Land Bank correctly argues that long-standing principles of statutory interpretation compel courts to interpret seemingly conflicting statutes to avoid the conflict and give effect to Congress' intent. *Watt v. Alaska,* 451 U.S. 259, 266–67, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). Repeals by implication are disfavored, "and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 549–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). Courts must seek to determine Congress' intent by examining the com-

plete framework of related legislation, for "[s]tatutory construction is a holistic endeavor". *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). This court application of those principles leads it to believe the bankruptcy court reached the correct result, although our reasons differ.

■ This court believes, as did the bankruptcy courts in *Neff* and *Arthur,* that the two statutes do not conflict. "The cited provision in the Farm Credit Act is an enabling provision directed solely at the operations of farm credit entities in the normal course of business. Nothing in the statute or any relevant legislative history indicates, insofar as the Court is aware, that the provision has any application in bankruptcy." *In re Neff,* 89 B.R. at 675. If the Farm Credit Act provision were meant to take precedence over the Bankruptcy Code, Congress would certainly make its intention more clear. "[L]egislative intent to override rights granted by the Bankruptcy Code would have to be express and precise." *Id.* The Farm Credit Act does not provide the clear statement to preempt the bankruptcy laws this court would expect if preemption were Congress' intent.

Although bankruptcy courts have forbidden stock surrender in Chapter 11 cases, their reasoning is not convincing, especially when applied to Chapter 12. *See In re Walker,* 48 B.R. 668 (Bankr.D.S.D.1985); *In re Cooperativa Cafeteros De Puerto Rico,* 19 B.R. 732 (Bankr.D.P.R.1982). In those Chapter 11 cases, the Bankruptcy Code was trumped by laws meant to provide secure long-term credit to farmers. Chapter 12 is another attempt, by a different means, for Congress to provide relief for farmers. The court believes Congress did not intend to have the "fighting chance" Chapter 12 provides obviated by the Farm Credit Act.

---

**3.** Of these cases, only *Neff* (1988) and *Ivy* (1988) were rendered after the District Court reversed

*Massengill,* 100 B.R. 276 (E.D.N.C.1988).

## III.

The Land Bank next argues that the Bankruptcy Court erred in finding that the interest rate to be applied to loans outstanding equaled the prime rate plus a risk factor depending on the size of the loan. It contends the proper rate is the Land Bank's contract rate, either because the Farm Credit Act requires it, or because the evidence in the Bankruptcy Court established that the market rate is the contract rate.

Section 1225(a)(5)(B)(ii) provides that a plan may not be confirmed unless "the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim...." That is, the court must determine the present value equivalent of an allowed claim, i.e., the interest rate on the loans outstanding. The Bankruptcy Court held that the interest rate would be the prime rate in New York City on the first market day of the quarter immediately preceeding the filing of the petition, adjusted annually, plus a risk factor. For loans up to $100,000 the interest rate would be the prime rate plus two points; for amounts between $100,000 and $350,000, the prime rate plus two and one-half points, and for amounts from $350,000 to $500,000, the prime rate plus three points.

■ The Land Bank argues that the Farm Credit Act prohibits this interest rate structure. Section 2015 of 12 U.S.C. provides:

Loans and discounts made by a Farm Credit Bank shall bear interest at a rate or rates, and on such terms and conditions, as may be determined by the Board of Directors of the bank from time to time.

In setting rates and charges, it shall be the objective to provide the types of credit needed by eligible borrowers at the lowest reasonable costs on a sound business basis taking into consideration the cost of money to the bank, necessary reserve and expenses of the bank and

associations, and providing services to members. The loan documents or discounting and financing agreements, may provide for the interest rate or rates to vary from time to time during the repayment period of the loan or agreement.

Section 2205 of 12 U.S.C. further provides that "[i]nterest rate limitations imposed by any state constitution or statute or other laws are hereby pre-empted for purposes of this chapter."

The Bankruptcy Code was not the kind of statute meant to be pre-empted by this provision. The Farm Credit Act gives the Land Bank authority to set its own interest rates according to sound banking practices. That does not mean it gives the Land Bank authority to override the Bankruptcy Code. *In re Caudill*, 82 B.R. 969, 975 (Bankr.S.D. Ind.1988). It is much more likely that Congress enacted this statute to avoid conflict with state usury laws. *In re Neff*, 89 B.R. at 676. As the bankruptcy court held in *Neff*,

Although the statute cited by the Land Bank may protect it from outside direction when it sets interest rates for its loans, that statute does not bind the judicial system in interpreting the legal standard required for payment of allowed secured claims in a reorganization process. Payment of an allowed secured claim to Land Bank is not a loan initiated or agreed to by Land Bank, but rather is an involuntary loan mandated by the bankruptcy laws.

*Id.* The contract rate is not then, as a matter of law, the applicable interest rate.

■ In the Sixth Circuit, the interest rate to be applied to repayment of secured debt is the current market rate in that area for a similar type of loan. *Memphis Bank and Trust v. Whitman*, 692 F.2d 427, 431 (6th Cir.1982). The factual finding of the Bankruptcy Court is subject to review under the "clearly erroneous" standard; the Land Bank argues that the Bankruptcy Court's findings are clearly erroneous because there is no evidence in the record to support such a finding.[4]

---

4. The debtors argue that even if the evidence is

insufficient, the applicable interest rate is a

The Bankruptcy Court purported to base its decision on the evidence presented at a hearing held February 18, 1988. In an order entered May 16, 1988, the court held that "[i]t was the testimony of local bankers that they rely on the New York prime in determining what interest they will charge their customers. Thus the current local market rate is determined by reference to the New York prime." The court was apparently referring to Steve Story, president of the Liberty Savings Bank of Mayfield, Kentucky, and Donald Clampet, senior vice-president of the Pennyrile Savings Bank in Hopkinsville, Kentucky. Story testified that his bank considers the cost of money, profit, operating expenses and risk in setting interest rates. Transcript, p. 171. He testified that the larger the loan, the greater the risk. Transcript, p. 173. Clampet testified that his banks based certain long-term loans on the prime rate as published in the Wall Street Journal. Transcript, p. 178. Both bankers testified that their banks would not give loans to any of these debtors.

All of the witnesses at the hearing said that their institution would not make a loan to the debtors. Even the Land Bank would not make new loans to persons in the debtors' circumstances, according to Mark McCance, assistant vice-president of Financial Planning and Analysis for the Farm Credit Banks of Louisville. Transcript, p. 148. Divining the current market rate when no real market for these loans exists is truly an inexact science.

With this difficulty in mind, the court cannot find "most cogent evidence of mistake or miscarriage of justice." *McDowell v. John Deere Indus. Equip. Co.*, 461 F.2d 48, 50 (6th Cir.1972), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) in the Bankruptcy Court's finding of fact. Bankruptcy Rule 8013 provides that "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." The question is not whether a different conclusion would be appropriate, but whether there is evidence in the record to show no error clearly occurred. *Matter of Bardwell*, 610 F.2d 228, 230 (5th Cir.1980). *See also In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988); *In re Edward M. Johnson and Associates, Inc.*, 845 F.2d 1395, 1401 (6th Cir.1988). Therefore, the court will not overturn the Bankruptcy Court's determination of the proper interest rate.

In conclusion, IT IS ORDERED that the judgment of the Bankruptcy Court is AFFIRMED. An appropriate order will accompany this memorandum opinion. It is a final order for all actions except *In re Harold Don Allen and Aiko N. Allen*, No. C–88–0276–P(J), in which more issues remain.

proper subject for judicial notice. Because the court finds that the Bankruptcy Court's ruling was not clearly erroneous, the court need not reach this issue.