In re Michael Lee MILLER and
Carolyn Sue Miller, Debtors.

Bankruptcy No. B89–0214.

United States Bankruptcy Court,
N.D. Ohio, E.D.

April 3, 1989.

David C. Barrett, Jr., Toledo, Ohio, for debtors.

Michael Demczyk, Akron, Ohio, Chapter 12 Trustee.

Kenneth J. Nordstrom, Nordstrom & Locke, Ashland, Ohio, for Farm Credit Bank of Louisville.

William J. Kopp, Asst. U.S. Atty., Cleveland, Ohio, for Farmers Home Admin.

Conrad J. Morganstern, Cleveland, Ohio, U.S. Trustee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter concerns the confirmation of a Chapter 12 plan of reorganization proposed by Michael and Carolyn Miller (Debtors). Objections to their proposed plan were filed by the Farm Credit Bank of Louisville (FCB), a successor to the interest held formerly by the Federal Land Bank of Louisville.[1] Following a hearing upon due notice to all entitled parties, a review of the evidence adduced, the record generally, and the arguments of counsel, the following constitutes the Court's findings and conclusions pursuant to Rule 7052, Bankr. Rules:

This is a core proceeding under relevant provisions of 28 U.S.C. 157(b)(2)(A) and (L), with jurisdiction further conferred under 28 U.S.C. 1334 and General Order No. 84 of this District. Herein, FCB is an oversecured creditor holding holding a first mortgage lien position on the Debtors' 96.75 acre farm which is located in Lorain County, Ohio. As of January 19, 1989, the unpaid principal balance due on the mortgage note was $94,044.40. An appraisal submitted by the Debtors which was prepared in November of 1988 revealed an appraised value of the farm realty in an amount of $121,000.00. FCB's appraisal of

---

1. An earlier objection filed by the Farmers   Home Administration was withdrawn.

the same property reflected a value of $129,000.00. In their proposed plan, the Debtors provide treatment of FCB's secured claim in the following manner:

1) Abandon the FCB stock to FCB for a credit of $3,625.00;

2) Pay the balance of FCB's secured claim over a period of thirty years at a fixed interest rate of 10% per annum. Payments of principal and interest to be made in monthly installments of $785.00 beginning on the effective date of the plan.

In view of those specific plan provisions, FCB objected to the confirmation of the Debtors' plan.

The general issue for the Court's determination is whether the Debtor's plan complies with the confirmation requirements of § 1225 of the Bankruptcy Code. Sub-issues to be addressed are threefold: 1) whether the Debtors' proposed extension of FCB's amortization period is reasonable; 2) under a deferred payment method, what constitutes an appropriate discount rate for the time value for the use of a creditor's money; and 3) whether provisions of Title 11 have supremacy over those provisions in Title 12 where a conflict exists.

FCB contends that 1) the Debtors' plan fails to provide it with the required rate of interest on the allowed amount of its claim; 2) the plan unreasonably extends its amortization period; 3) the Debtors' intention to abandon their stock in FCB fails to comply with applicable nonbankruptcy law; and 4) the plan is defective as the Debtor's plan purports to release FCB's lien.

## II.

Plan confirmation requirements under Chapter 12 are set forth under § 1225 of the Bankruptcy Code. The first issue for resolution specifically requires the Court to examine § 1225(a)(1) which requires that the plan comply with provisions of Chapter 12 and other applicable provisions of Title 11. It is hearby determined that the Debtors' plan fully complies with the requirements of § 1222(a) in that it provides for the submission of all or a portion of future earnings or income of the Debtors to the plan; provides for full payment in deferred cash payments; and properly classifies claims and interests.

■ The plan proposes to extend the amortization period to 30 years from the present 24 years remaining on their amortization period. FCB contends that such an extension is unreasonable, while providing no authoritative support for its position. Although FCB is a secured claimant, it is clear that a plan proponent can modify the rights of a secured claimant. Section 1222(b) in pertinent part, provides:

§ 1222(b)

Subject to subsections (a) and (c) of this section, the plan may—

(2) Modify the rights of holders of secured claims—or leave unaffected the rights of holders of any class of claims. [11 U.S.C. § 1222(b)(2) ].

FCB also fails to recognize that under § 1222(b)(9) there is no time limit on repaying secured claims. In other respects, the extension to a thirty-year period is not unreasonable, particularly in view of the fact that the plan provides for monthly installments to FCB, as opposed to the prepetition annual payments. As evidenced from both valuations of the farm property, FCB is an oversecured creditor. *See, In re O'Farrell,* 74 B.R. 421 (Bankr.N.D.Fla. 1987). Additionally, as may be evidenced from the adduced testimony, thirty-year loan periods are not unique to the FCB's lending program. (*See,* Cross–Exam., W.L. Erwin). Accordingly, FCB's objection to the proposed thirty-year amortization period is overruled.

■ Next, the FCB contends that the Debtors' proposed interest rate on the deferred payments is improper. This issue actually addresses whether FCB is being offered the value of its allowed secured claim as of the plan's effective date. Section 1225(a)(5)(B)(ii) of the Code provides that a plan is to be confirmed if the "value of [a secured] claim as of the effective date of the plan, of property to be distributed by the trustee or debtor under the plan on account of such claim is not less than the allowed amount of such claim ...." In the

present case, the plan's effective date is sixty days post-confirmation. The appraisal of the farm indicates that the FCB is oversecured. As such, under § 506(b) of the Code, FCB is entitled to interest on its claim in addition to any reasonable fees, costs or charges provided for under the agreement which underlies the claim. Since the payments to FCB are to be made on a deferred basis, this provision requires the value of the payments to be discounted to present value. That is, a suitable rate of interest is to be allowed the secured creditor to compensate for the time value of its money.

The Debtors contend that the rate of interest applied to U.S. Treasury bills is the appropriate rate of interest, while FCB contends that the prevailing market rate of interest on similar loans is the appropriate measure of interest to be used. The prevailing view in this Circuit requires this Court to find that a market rate of interest is to be used in determining the present value of an allowed secured claim. Absent special circumstances, Bankruptcy Courts should use the current market interest for similar loans in the region. *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431 (6th Cir.1982); 5 *Collier on Bankruptcy*, ¶ 1129.03, at 1129–65 (15th Ed. 1985). In fact, "market" rate is the most widely accepted approach to determining the appropriate discount rate. Notwithstanding the fact that *Memphis Bank* involved a Chapter 13 case, since Chapter 12 was legislatively patterned after Chapter 13 provisions, the substantive impact of that case's holding in this regard is equally applicable to the present case. The selection of a U.S. Treasury bill rate would be inappropriate in this matter since such rates generally are applied to short-term low-risk investments and, secondly, that particular rate is a rate at which the federal government can borrow money—not the rate at which creditors could earn money.[2] Thusly, the appropriate rate is the prevailing market rate on similar loans, as long as that rate does not exceed the contract rate of interest.

■ At the time the mortgage note was negotiated, the agreement called for a fixed rate of interest of 8.75%. Presently, and since 1985, the Debtor has paid a variable rate of interest on the loan's principal balance. The current variable rate is 12.75%. Upon consideration of the quality of the security and other risk factors attendant to a deferred payment process, including but not limited to a possibility of future defaults, a changing farm economy, the duration of the payment period, inflation, comparable third-party rates, and the prevailing prime rate, a rate of 11% is hereby determined to be an appropriate discount rate to be charged throughout the plan. This fixed rate is reasonable in view of the fact that the Chapter 12 plan process tends to reduce certain risks which FCB has hereto been exposed to. For instance, once the plan is confirmed, the Chapter 12 Trustee oversees the Debtors' affairs and reduces administrative and collection costs. The presence of the Trustee adds further assurance that the payments will be timely made. Chapter 12 also requires the court to make a feasibility determination. Moreover, FCB interest rates are to be established at the lowest reasonable cost on a sound business basis. 12 U.S.C. 2015; 12 C.F.R. 614.4321. Thusly, the FCB's objection to the proposed interest rate is sustained in part and overruled in part.

■ Thirdly, the FCB contends that the plan is not confirmable as it tends to conflict with a provision of Title 12 which prevents debtors from abandoning their shares of stock. This Court finds that argument not well advanced and the objection is overruled. In promulgating Chapter 12, the prime objective of Congress was to provide financial relief for the financially distressed family farmer. To allow the abandonment of the FCB stock shares would clearly subserve that purpose. Further, the specific statutory language of § 1225(a)(5)(C) allows the debtors to surrender property securing a claim to the claimholder. Here the FCB is the holder of the secured claim and § 1225(a)(5)(C) allows a surrender to that holder. To

2. Kessel, R.J., Calculating The Present Value,

achieve confirmation, the debtor is required only to comply fully with § 1225 of Title 11 and other provisions of Title 11, per § 1225(a). [11 U.S.C. § 1225(a)].

FCB contends that the Debtors' proposed abandonment of its stock shares fails to comply with the requirements of 12 U.S.C. 2034. This failure, it asserts, would render the plan nonconfirmable pursuant to § 1225(a)(3) of the Bankruptcy Code. In pertinent part, § 2034 of Title 12 provides:

§ 2034. Association stock; value of shares; voting

(a)—No person but borrowers from the bank shall become members and stockholders of the association. If an application for membership is approved and if the applied-for loan is granted, the member of the association shall subscribe to stock in the association in an amount not less than 5 per centum nor more than 10 per centum of the face amount of the loan as determined by the bank. Stock shall be paid for in cash by the time the loan is closed ... Stock shall be retired and paid at fair book value not to exceed par, as determined by the association, upon the full repayment of the loan and if the loan is in default may be cancelled for application on the loan, or under other circumstances, for other disposition, when approved by the bank. [12 U.S.C. § 2034(a)]

It is the above language which FCB relies on to assert that the plan cannot be confirmed since only the bank can approve a retirement of the stock. In view of the provisions of § 1225(a)(1) and § 1225(a)(5)(C), the FCBs position is untenable. Chapter 12 is an emergency chapter which offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair payment. (132 Cong.Rec. H 8998, H 8999 (Oct. 2, 1986); Conf.Rept. 99–958, pp. 49, 50.) Section 1225(a)(1) of the Bankruptcy Code allows confirmation if the plan complies with provisions of Chapter 12 and with other applicable provisions of Title 11. This statutory language clearly negates the need for compliance with any other nonbankruptcy law. Clearly, Title 12 U.S.C. 2034 is not a provision of Title 11 U.S.Code. Further, § 1225(a)(5)(C) allows a plan to be confirmed if with respect to each allowed secured claim provided for by the plan the debtor surrenders the property securing such claim to the holder of the secured claim. The Debtors' intent to surrender its stock shares to FCB specifically comports with § 1225(a)(5)(C).

The FCB's reliance on nonbankruptcy law is misplaced. Since July of 1988, the statutory provision of 12 U.S.C. 2034 has been omitted. That provision was a part of the Farm Credit Act of 1971, Public Law 92–181. Effective six months after January 6, 1988, Farm Credit Banks (FCB's) were established in those districts which experienced a merger of the district's Federal Land Bank with the district's Federal Intermediate Credit Bank. (As amended, Pub.L. 100–233, Title IV, § 401, Title VIII, § 802(a), Jan. 6, 1988, 101 Stat. 1622, 1710). In the Codification process of § 401, Pub.L. 100–233, certain prior provisions of Title 12 U.S.C. were omitted, and 12 U.S.C. 2034 was one of the omitted sections. Thusly, for this additional reason, FCB cannot rely on that provision as an impediment to the Debtors' plan confirmation. Even if the statutory language of 12 U.S.C. 2034 were to be presently effective, it would not thwart plan confirmation under Chapter 12 since it is not a provision under Title 11, U.S.Code. *Arguendo,* to the extent that 12 U.S.C. 2034 may ostensibly conflict with 11 U.S.C. 1225(a)(5)(C), for the reasons heretofore stated, the plan confirmation requirements under § 1225 of the Bankruptcy Code would prevail. Moreover, § 1225(a)(5)(C) of the Bankruptcy Code is no less of a specific statutory provision than is found under 12 U.S.C. 2034. To the extent a conflict may exist, if indeed one does exist, it is not the province of the Court to take corrective action. Finally, the intended stock abandonment does not impair FCB's security, as FCB is an oversecured creditor with an undisputed 30% equity cushion. Accordingly, the FCB's ob-

jection to the Debtors' surrender of their stock shares is overruled.

Finally, the FCB's contention that the Debtors intend to release FCB's mortgage lien on the Debtors' farm is not supported by any provision in the Plan. To the contrary, the Debtors argue that no release of FCB's lien is contemplated. Accordingly, that objection of FCB is likewise overruled.

## CONCLUSION

In view of the foregoing findings, the objections of FCB to to plan confirmation are hereby overruled. The Debtors are hereby directed to submit an amended plan reflecting a discount rate of 11% fixed interest to be applied to the deferred payment period. In all respects, except as herein noted, the Debtors' plan is feasible and fully complies with the confirmation requirements of § 1225 of the Code. Therefore the plan is feasible and is confirmed.

In furtherance of these findings, a judgment shall enter thereon.

IT IS SO ORDERED.