**In re Bobby N. WRIGHT and Edna Delores Wright, Debtors.**

**Bankruptcy No. 188–05803.**

United States Bankruptcy Court, M.D. Tennessee.

Aug. 31, 1989.

Paul E. Jennings, Nashville, Tenn., for debtors.

Clarence M. Beaty, Jr., Nashville, Tenn., for Federal Land Bank of Louisville.

## ORDER

GEORGE C. PAINE, II, Chief Judge.

This case comes before the court on confirmation of debtors' proposed Chapter 12 plan. The Federal Land Bank of Louisville (FLB) objects to the plan. The following constitute findings of fact and conclusions of law. F.R.Bankr.P. 9014, 7052.

The objecting creditor, FLB, holds a claim in the amount of $434,405.48 secured by a first mortgage on the debtor's real property and by a lien on the debtor's stock in the Federal Land Bank Association (FLBA). The parties have stipulated that the real property securing the claim is worth $378,000 and that the stock is worth $20,100. The debtor was required to purchase the FLBA stock when it borrowed the funds from FLB. At that time borrowers were required to purchase stock representing 5% of the amount borrowed. Due to regulatory changes the amount of stock required to be purchased is being reduced to 3% of the loan. For this reason FLB and the debtor has stipulated that the stock would be reduced in value to $11,343, representing 3% of the loan.

Under the plan the debtor would pay the secured portion of FLB's claim over thirty years at a fixed rate of 10% interest. The debtor has offered to modify the plan to increase the fixed rate of interest to 11.4%. In addition, the debtor proposes to redeem the stock in satisfaction of that portion of the loan.

FLB objects on two grounds. First, FLB asserts that the debtor may not redeem the stock to satisfy part of the loan obligation. Second, FLB asserts that the proposed interest rate fails to give FLB the present value of its claim.

FLB claims that its statutory authority to lend funds to farmers dictates that it alone may decide when and if to redeem or cancel stock. Under the statutory scheme farmers who wish to borrow from FLB must purchase stock equal in value to at least 5% or now 3% of the original loan amount. 12 U.S.C. § 2034 (1982). This stock purchase requirement is designed to insure the adequacy of the capitalization of the farm credit system. *In re Neff,* 89 B.R. 672, 673 (Bankr.S.D.Ohio 1988). The statute further states that FLB may, in its sole discretion, cancel stock when loans are in default. 12 U.S.C. § 2131(d). FLB thus argues that the debtor may not use bankruptcy to force FLB to cancel or redeem stock when it does not choose to do so.

Chapter 12 of the Bankruptcy Code, however, clearly authorizes debtors to surrender or redeem collateral to satisfy debts as part of a reorganization plan. 11 U.S.C. §§ 1222, 1225 (1982). The issue then becomes whether the Farm Credit Act limits the debtor's alternatives authorized under Chapter 12 of the Bankruptcy Code.

The Supreme Court considered the interplay of the Bankruptcy Code and another federal statute in *NLRB v. Bildisco (In re Bildisco),* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). In that case the debtor filed a Chapter 11 petition for reorganization, immediately ceased to honor a collective bargaining agreement, and then later rejected the collective bargaining agreement pursuant to § 365. The NLRB and the Union claimed that these actions violated § 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158 (1982). The Supreme Court held that the need for flexibility in bankruptcy reorganizations outweighed the concerns of the NLRA. The Court emphasized the absence of specific exceptions within the Bankruptcy Code or

other clear indication of congressional intent to limit a debtor-in-possession's options under the Code. *Bildisco*, 465 U.S. at 521, 532–33, 104 S.Ct. at 1193, 1199.

Similarly, the need for flexibility in Chapter 12 farm reorganizations outweighs the concern in the Farm Credit Act that under normal conditions limits debtors' ability to redeem stock. Congress has not manifested any intent in either statute to limit a debtor-in-possession's flexibility under the Bankruptcy Code. See *In re Neff* 89 B.R. at 674–75; *In re Massengill*, 73 B.R. 1008 (Bankr.E.D.N.C.1987), *rev'd*, 100 B.R. 276 (E.D.N.C.1988). If anything Congress' creation of Chapter 12 as a special, emergency, temporary means of relief for farmers indicates that Congress wanted farmers to have even greater flexibility than other debtors seeking to reorganize. FLB's objection to the surrender of the stock is overruled.

■■■ FLB also objects to the proposed interest rate. A Chapter 12 plan may be confirmed over the objection of a secured creditor if property to be distributed to the creditor is at least equal to the value of its secured claim as of the effect date. § 1225(a)(5)(B)(ii). If paid over time the secured creditor must be paid the present value of its claim. Such present value is paid if the creditor receives the current market rate of interest for similar loans in the region. *United States v. Arnold*, 878 F.2d 925 (6th Cir.1989); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982).

■■■ FLB argues that the relevant market rate is the rate that it charges for such loans. It argues that no other lender makes such long term farm loans; therefore, its rates are the only relevant rates. Furthermore, FLB argues that it will only make the kind of loan made here on a variable rate which is 2% over its cost of money. FLB secures its funds by issuing its own bonds and then charges the debtors a certain percentage over the rate it pays on those bonds. The bonds are issued annually for a one year term so the rate changes every year as the new bonds are issued. Accordingly, FLB argues the only rate that can secure FLB its present value

is a variable rate which matches FLB's contract variable rate on its loans.

The court rejects FLB's argument that the only proper rate is a variable rate. The Code does not give a creditor the right to shift the risks of future variations in interest rates to a debtor. In effect, a variable rate would do just this. Rather the code entitles a creditor to receive a sufficient rate of interest on its secured claims, given the known risk factors at the date of confirmation, to insure that the future stream of payments will have a present value equal to the secured portion of the creditor's claim. See *In re Aztec*, 99 B.R. 388 (Bankr.M.D.Tenn.1989). This implies a fixed rate that reflects current known risk factors.

The debtor's evidence to establish the sufficiency of the proposed interest rate, however, is sparse, to say the least. The debtor has submitted quotes on interest rates for conventional thirty-year fixed loans. These are not farm loans. The quoted rates are 11.75% with no points and a 1% origination fee in one case and 11.75% with 2 points in another case. The parties have also stipulated the Farmers' Home Administration is quoting rates of 9.75%, but has no money to lend until the next fiscal year. Last, the parties have stipulated that the Federal Farm Credit rates reported in the Wall Street Journal are 10.25% and 11.35% and that the thirty-year treasury bill rate is 9.11%. The debtor has failed to demonstrate to the Court how any of these rates establish a market rate for a thirty-year fixed rate farm loan such as this.

The court thus holds that the debtor has failed to establish that the proposed interest rate either the original 10% or the proposed 11.4% is sufficient to guarantee FLB the present value of its secured claim as required by § 1225.

Based on the foregoing, confirmation of the debtors plan is denied.

IT IS THEREFORE SO ORDERED.