**In re Michael Lee MILLER and Carolyn Sue Miller, Debtors.**

**Bankruptcy No. B89–0214.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Sept. 18, 1989.

David C. Barrett, Jr., Arnold & Barrett, Toledo, Ohio, for debtors. ·

---

Kenneth J. Nordstrom, Nordstrom & Locke, Ashland, Ohio, for Federal Land Bank Ass'n of Fostoria.

Michael V. Demczyk, Akron, Ohio, Chapter 12 Trustee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The Federal Land Bank Association of Fostoria (FLB), a successor in interest to the Farm Credit Bank of Louisville, seeks amended findings of fact and alteration or amendment of this Court's judgment entered on April 6, 1989, which confirmed the Chapter 12 Plan (the Plan) of reorganization filed by Michael L. and Carolyn S. Miller (Debtors). 98 B.R. 311.

FLB, in its objection to plan confirmation, contested (1) the Plan's proposed rate of interest to be paid on its secured claim and (2) the Plan's treatment of certain FLB stock. Specifically, objections on which FLB now seeks supplemental findings of fact are as follows:

1) FLB, as a holder of a secured claim, did not accept the plan of reorganization of the Debtors.

2) The evidence which supports an 11% fixed interest rate as the appropriate rate to be paid to FLB.

3) The evidence which fulfills the Court's criteria that the "prevailing market rate on similar loans is 11% fixed interest."

In substantial part the thrust of the FLB's request is to have the Court reconsider that which was initially heard and considered at the confirmation hearing on the Debtor's Plan. Upon consideration of FLB's present motion and upon reconsideration of the April 6, 1989 judgment, the following amended findings and conclusions are hereby made.

FLB, an oversecured creditor of the Debtors, holds a first mortgage lien on the Debtors' 96.75 acre farm in Lorain County, Ohio. As of the petition date, the principal balance due on the mortgage note was $94,044.40. The Debtors' appraisal of the farm was $121,000.00. The FLB's appraisal was $129,000.00. As such, both appraisals reflected FLB as an oversecured claimant. The original mortgage note required an 8.75% fixed rate of interest to be paid. At the time of the Plan's confirmation, and since 1985, the Debtors were paying a variable rate of interest. At Plan confirmation, the Debtors were paying 12.75% variable interest rate. For reasons set forth in this Court's confirmation ruling issued on April 3, 1989, a fixed interest rate of 11% was determined to be an appropriate interest rate throughout the Plan.

Reconsideration is given in view of the Sixth Circuit's recent clarification of its earlier decisions regarding the issue of present value. In *U.S. v. Arnold,* 878 F.2d 925 (6th Cir.1989), the Sixth Circuit re-examined its rulings in *In re Colegrove,* 771 F.2d 119 (6th Cir.1985) and in *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982) to see if a conflict existed between those decisions. In conclusion, it held that the two earlier rulings were clearly distinguishable. *Id.* 878 F.2d at p. 930. Unequivocally, that Court held that "where a 'cramdown' occurs under section 1225(a)(5)(B) and a creditor is forced to write-down a portion of its note, a creditor is entitled to receive its current market rate on the 'new loan.'" *Id.*

At bar, it is undisputed that the FLB is an oversecured creditor. It is further apparent that the FLB, by its objection to the Plan, did not accept the Plan as proposed. Thusly, the Plan's confirmation over FLB's objection resulted in a cramdown effect as allowed by § 1225(a)(5)(B) of the Bankruptcy Code [11 U.S.C. 1225(a)(5)(B)]. Accordingly, FLB was allowed to retain its lien securing its claim and was allowed the value of its lien as of the Plan's effective date. *See,* 11 U.S.C. 1225(a)(5)(B)(i) and (ii). In *Memphis Bank,* a Chapter 13 case, the Sixth Circuit held that "§ 1325(a)(5) requires the Bankruptcy Court to assess interest on an allowed secured claim for the present value of the collateral in order to avoid dilution of the value of the claim through the delay in payment." *Id.* at p. 928. The Court fur-

ther held that in the absence of special circumstances bankruptcy courts should use the current market rate of interest for similar loans in the region. *Memphis Bank, supra,* at 431. At bar, FLB's claim is oversecured and is not threatened by dilution. With an FLB appraisal value of $129,000.00 against the farm's $94,044.00 mortgage balance, there exists a substantial equity cushion to deter any dilution of value. In *Arnold,* as noted above, the Sixth Circuit requires a creditor to receive its current market rate of interest only where that creditor was forced to "write-down" a portion of its note by reason of a cramdown. Because of FLB's oversecured claimant status, no write-down was necessitated by FLB, forced or otherwise.

The Sixth Circuit in *Memphis Bank* held that the undersecured creditor was entitled to interest at the current market rate, even if the current market rate exceeded the contract rate. In *Colegrove,* however, the Sixth Circuit held that a current market rate is proper with a "maximum limitation" on the interest rate to be awarded being the underlying contract rate of interest. The creditor in *Colegrove* was fully secured and was not required to undergo a write-down of its claim, whereas the creditor in *Memphis Bank* was undersecured and was forced into a write-down situation by operation of law.

At the time of the present Debtors' Plan confirmation, FLB's interest rate on the Debtors' farm mortgage was a 12.75% variable rate. Variable rates are permissible under the subject mortgage agreement and thusly may constitute a contract rate of interest. As earlier determined, the initial rate of interest under the mortgage agreement was 8.75% which was applied in 1978. (See, FCB Ex. 1). The variable interest rate charged has been as high as 14.75% as a default interest rate. Due to their delinquent payment record, the Debtors were charged and paid a 14.75% default interest rate during most of 1987. At other times in 1987 they were charged a rate of 12.75%. Throughout 1988, they were charged a default interest rate of 14.75%, until September 5, 1988 when their interest rate again reverted to 12.75%. They have been charged no less than 12.00% interest on their mortgage since an announced rate change occurred on September 1, 1981. On the petition date, January 19, 1989, the applicable interest rate was 12.75% (FCB Ex. 2). Postpetition, on March 1, 1989, the interest rate remained at 12.75%. At the time of Plan confirmation, the same interest rate was applied by the FLB. Thusly, 12.75% is the focal rate to be considered. In view of these additional findings, and upon reconsideration, a fixed rate of 12.75% interest is hereby approved as the contract rate for the term of the Debtor's approved Plan. The allowed interest rate for the plan is a fixed rate, as opposed to a variable rate as the value must be fixed as of the Plan's effective date. See, *U.S. v. Neal Pharmacal Co.,* 789 F.2d 1283 (8th Cir.1986). See also, *In re Janssen Charolais Ranch, Inc.,* 83 B.R. 743 (Bankr.Mont. 1987). The interest rate previously approved at Plan confirmation is hereby vacated.

*Stock Abandonment*

■ The matter, *sub judice,* is more akin to the *Colegrove* situation where the creditor was fully secured. Although there exists no apparent write-down on the farm mortgage, per se, due to the FLB's oversecured status, there is some diminution of its security. As argued by the FLB, there is a Farm Credit Administration (FCA) requirement for borrowers to own a certain amount of stock to partially collateralize a loan. 12 U.S.C. 2034(a). In the Debtors' confirmed Plan, a provision calls for abandonment of their required FCA stock shares. *See,* Plan. That abandonment effectively diminishes, in part, the FLB's security although it remains oversecured.

The Plan, as confirmed, allowed the Debtors to abandon certain shares of stock which they were required to purchase pursuant to a requirement of the Farm Credit Administration (FCA). Upon reconsideration, that specific Plan provision allowing such abandonment and the pertinent portion of the judgment entered thereon is hereby vacated. The applicable provision of the former Farm Credit Act, which disallowed such a unilateral abandonment of

stock by a borrower, were recodified into the present Agricultural Credit Act of 1987, Pub.L.No. 100–233, 101 Stat. 1568 (1988), which effectively maintained the requirement of allowing the lenders sole discretion regarding stock retirement. See, 12 U.S.C.A. 2154a(c)(1)(I); See also, *In re Shannon,* 100 B.R. 913, 920 (S.D.Ohio 1989). Accordingly, the instant Debtors cannot abandon their stock shares without the FLB's approval.

### CONCLUSION

Accordingly, the movant's motion is granted, and this Court's Memorandum of Opinion and Order and Judgment confirming the Debtors' Plan entered on April 6, 1989 is hereby altered and amended to the extent addressed herein.

IT IS SO ORDERED.