In re Ray Gordon DAVENPORT and Carolyn Jean Davenport, Debtors.

WESTERN FARM CREDIT BANK and Sierra–Bay Federal Land Bank Association, Appellants,

v.

Ray Gordon DAVENPORT and Carolyn Jean Davenport, Appellees.

BAP No. EC–92–1400–JMeAs.
Bankruptcy No. 989–02119.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 23, 1993.

Decided April 27, 1993.

Richard W. Brunette, Jr., Los Angeles, CA, for Western Farm Credit Bank & Sierra–Bay Federal Land Bank.

Carl W. Collins, Modesto, CA, for Ray & Carolyn Davenport.

Before JONES, MEYERS and ASHLAND, Bankruptcy Judges.

### OPINION

JONES, Bankruptcy Judge:

### FACTS

Debtors Ray and Carolyn Davenport ("Debtors") are farmers who own 24.22 acres of land in California worth $354,462. In August of 1989, the Debtors filed a petition under Chapter 12 of the Bankruptcy Code, 11 U.S.C. §§ 1200–1241.[1]

---

**1.** All references to the Bankruptcy Code are to Title 11 of the United States Code, 11 U.S.C. §§ 101–1330.

The Debtors' land secures an obligation to Western Farm Credit Bank and Sierra–Bay Federal Land Bank Association ("Bank") in the amount of $469,245. The Bank's loan to the Debtors was made under the Farm Credit Act, 12 U.S.C.S. §§ 2001–2260 (1984 & Supp.1992) ("FCA"). In addition to being secured by the Debtor's real estate, the loan was secured by a note payable to the Debtors with a face amount of $47,985 ("Cheung Note") and by $23,165 in Farm Credit Stock ("Stock") which the Debtors purchased as a requirement of obtaining the loan.[2]

In September, 1991, the Debtors sought approval of their third amended plan of reorganization ("Plan"). The Plan provided that the Bank's secured claim would be reduced to the value of the collateral, $425,612, and the remainder, $43,633, would be unsecured. The Plan further provided that the Debtors would surrender to the Bank the Cheung Note and the Stock in return for credit against the Bank's secured claim of $71,150 (the face amount of the Cheung Note plus the value of the Stock). Thus, under the Plan, the Bank would be left with (1) a $354,462 secured claim to be paid over 20 years at 10% interest, (2) the Cheung Note, (3) the Stock, and (4) an unsecured claim of $43,633.

The Bank objected to confirmation arguing, *inter alia*, that redemption of the Stock contradicted the FCA, which requires borrowers to own bank stock and which provides that such stock may only be redeemed at the discretion of the Bank. According to the Bank, allowing Chapter 12 debtors to force farm credit banks to redeem stock would undercut the capitalization requirements established by the FCA. The Bank thus asserted that the Debtors' plan should not "force" the Bank to redeem the Stock and argued that its secured claim should include the value of the Stock without a credit against the claim on account of the Stock.

The court rejected this argument and confirmed the Plan. The court noted that there was a split of authority on the issue of forced redemption and rejected the line of cases denying Chapter 12 debtors this power. The court took particular note that farm credit stock has no value outside the FCA borrowing context: "The parties agree that [the] stock is non-voting and non-transferrable and it seems that the only source of value for the stock depends on whether or not it may be surrendered or redeemed to satisfy the very debt which was used to buy it." E.R. 4 at 11–15.

The court's memorandum decision was entered on April 13, 1992. The Bank filed a notice of appeal on April 17, 1992. An order confirming the Plan was entered on February 8, 1993.[3]

## ISSUES

Whether the trial court properly confirmed a Chapter 12 plan which provided for the forced redemption of FCA stock.

## STANDARD OF REVIEW

■ Determining whether the trial court erred in confirming the Plan requires an analysis and interpretation of several statutes. Issues of statutory construction are reviewed *de novo*. *See In re Rubottom*, 134 B.R. 641, 643 (9th Cir. BAP 1991).

## DISCUSSION

*1. Statutory Framework: Chapter 12 v. Farm Credit Act*

Bankruptcy Code § 1225 contains the standards for confirming a Chapter 12 plan: Section 1225(a)(3) requires that the plan be "proposed in good faith and not by any means forbidden by law;" § 1225(a)(5)(C) allows a Chapter 12 debtor to surrender property securing a claim to the secured creditor and receive credit for

---

**2.** A borrower under the FCA must own shares of stock in the Bank for the cooperative from which the loan is sought. 12 U.S.C.S. § 2017 (Supp.1992). By statute, the Bank obtains a lien on the stock. 12 U.S.C.S. § 2022 (Supp.1992).

**3.** The notice of appeal is timely pursuant to Federal Rule of Bankruptcy Procedure 8002(a) which provides that a notice of appeal filed after announcement of a decision but before entry of an order is "treated as filed after such entry and on the day thereof."

the value of the collateral; and § 1222 provides the debtor with a variety of alternatives for restructuring finances, including authorizing the debtor to "provide for the sale of all or any part of the property of the estate or the distribution of all or any part of the property of the estate among those having an interest in such property." 11 U.S.C. § 1222(b)(8).

■ Chapter 12 is emergency legislation enacted in response to the failures of family farmers in the 1980's which resulted in many farmers losing their homes and their farms. Chapter 12 is intended to provide family farmers with maximum flexibility in restructuring debt. *See In re Neff,* 89 B.R. 672, 674 (Bankr.S.D.Ohio 1988); *In re Ivy,* 86 B.R. 623, 624 (Bankr.W.D.Mo.1988). "These provisions, and chapter 12 as a whole, are 'designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land.'" *In re Greseth,* 78 B.R. 936, 943 (D.Minn. 1987) (quoting H.R.Rep. No. 99–958, 99th Cong., 2d Sess. 48, *reprinted in* U.S.C.C.A.N. 5227, 5249).

■ The FCA establishes and governs the farm credit system, including farm credit banks ("FCB"), 12 U.S.C.S. §§ 2002, 2011 (1984 & Supp.1992). The purpose of the FCA is to improve "the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and related services...." 12 U.S.C.S. § 2001(a) (1984). To be eligible for a loan from a FCB, a borrower must own or purchase stock in the FCB in their district. *See* 12 U.S.C.S. §§ 2017, 2021(c) (1984 & Supp.1992). The purpose of requiring stock ownership "is to ensure the adequacy of the capitalization of the farm credit system...." *In re Neff,* 89 B.R. 672, 673 (Bankr.S.D.Ohio 1988).

The FCA gives the board of directors of the FCB discretion to redeem stock. When (1) a loan is repaid in full and the bank meets capitalization standards, or (2) a loan is in default, the board has the discretion, but not the obligation, to cancel the borrower's stock and either apply the value of the stock against the loan debt or pay the borrower for the stock. 12 U.S.C.S. §§ 2154a(c)(1)(I), 2154a(f) (Supp.1992). Farm credit stock is non-voting, non-transferable and has no value to the borrower other than for redemption when the loan is paid or for application to the loan indebtedness if the loan is in default. *See* E.R. 6 at 9–11.

*2. Caselaw: A Clear Split of Authority*

■ As the trial court noted, there is a split of authority among the courts that have addressed the issue presented here. None of the published decisions come from a court in the Ninth Circuit. We thus face an issue of first impression.

a. Cases Denying Forced Redemption

Several courts have adopted the Bank's position that Chapter 12 debtors cannot force farm credit banks to redeem stock. *In re Overholt,* 125 B.R. 202, 216–217 (S.D.Ohio 1990); *In re Shannon,* 100 B.R. 913, 915–926 (S.D.Ohio 1989);[4] *In re Massengill,* 100 B.R. 276, 284 (E.D.N.C.1988) (reversing *In re Massengill,* 73 B.R. 1008 (Bankr.E.D.N.C.1987)); and *In re Miller,* 106 B.R. 136, 138–139 (Bankr.N.D.Ohio 1989) (following *Shannon* without analysis and reversing original ruling at 98 B.R. 311).

The most comprehensive analysis of this issue appears in *In re Shannon.* The *Shannon* court concluded that there is a conflict between the FCA, which gives the lender sole discretion to allow redemption of stock, and Chapter 12, which allows a debtor to require a lender to take back collateral in return for a credit for the value of the collateral. 100 B.R. at 916–918.

In attempting to reconcile this conflict, the court first sought to discern Congressional intent. The court concluded that the FCA is a more specific statute than Chapter 12 and therefore must prevail absent

**4.** In *Overholt,* the court merely followed its prior decision in *Shannon* without further analysis. *See Overholt,* 125 B.R. at 216. In fact, the court sanctioned counsel for raising the argument in *Overholt. Id.*

"evidence of a specific intention to allow Chapter 12 debtors to surrender their stock...." *Id.* at 918. The court found that Congress' general intention to aid farmers through its enactment of Chapter 12 insufficient to overcome the specific pronouncements it made in the FCA. In particular, the court noted that Congress placed great emphasis on stock ownership by borrowers in the farm credit system and viewed such ownership as critical to the continued success of the system. *Id.* at 920.

The court then reviewed and rejected the position taken by the cases allowing forced redemption. The *Shannon* court noted that the leading case allowing forced redemption, the bankruptcy court's decision in *In re Massengill,* 73 B.R. 1008, was reversed on appeal. *In re Massengill,* 100 B.R. 276. Because the cases allowing forced redemption of stock relied on the bankruptcy court's *Massengill* decision, the *Shannon* court found them of little precedential value. By contrast, the court found the district court's decision in *Massengill* "much more persuasive than the bankruptcy court's opinion." *Shannon,* 100 B.R. at 922. The *Shannon* court also noted that courts had unanimously denied Chapter 11 debtors the power to force farm credit banks to redeem stock. *Id.*

Finally, the court concluded that the equities did not weigh so strongly in favor of the debtors that Congressional intent and case law denying debtors the power of forced redemption should be ignored. *Id.* at 923–924. The court thus held that a Chapter 12 plan could not provide for forced redemption of land bank stock. *Id.* at 926.

b. Cases Allowing Forced Redemption

Notwithstanding the *Shannon* court's analysis, the majority of published decisions support the Debtors' position that a Chapter 12 plan may provide for the forced redemption of FCB stock. *In re Cansler,* 99 B.R. 758, 760 (W.D.Ky.1989); *In re Gre-*

*seth,* 78 B.R. 936, 942–944 (D.Minn.1987) (court allows redemption of stock in excess of 5% of loan balance); *In re Wright,* 103 B.R. 905, 906–907 (Bankr.M.D.Tenn.1989); *In re Neff,* 89 B.R. 672, 673–675 (Bankr. S.D.Ohio 1988); *In re Arthur,* 86 B.R. 98, 102–103 (Bankr.W.D.Mich.1988); *In re Ivy,* 86 B.R. 623, 624 (Bankr.W.D.Mo.1988).

These courts have analyzed the issue as follows: First, they point out that Chapter 12 gives debtors broad powers to modify rights of secured and unsecured creditors. Under Chapter 12, a debtor may, *inter alia,* surrender property in return for reduction of secured debt, sell property and use the proceeds to pay secured creditors, or change the interest rate or term of a loan. *See Ivy,* 86 B.R. at 624; *Neff,* 89 B.R. at 674; *Greseth,* 78 B.R. at 943.

Second, these courts point out that Chapter 12 is emergency legislation enacted to allow family farmers to survive severe economic circumstances. Thus, the provisions of Chapter 12 should be interpreted to give the debtor maximum flexibility in restructuring debts. *See Arthur,* 86 B.R. at 102; *Wright,* 103 B.R. at 906–907; *Greseth,* 78 B.R. at 943.

Third, these courts analogize the conflict between Chapter 12 and the FCA to the conflict between Chapter 11 and the National Labor Relations Act ("N.L.R.A.") which was addressed by the Supreme Court in *N.L.R.B. v. Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). In *Bildisco,* the Supreme Court allowed a Chapter 11 debtor to use Bankruptcy Code § 365 unilaterally to reject a collective bargaining agreement in the face of the N.L.R.A. which prohibited unilateral rejection of such agreements and itself evidenced a strong federal policy. *See Wright,* 103 B.R. at 906–907; *Neff,* 89 B.R. at 675; *Greseth,* 78 B.R. at 943.[5]

Finally, these courts note that allowing Chapter 12 debtors to redeem FCB stock is unlikely to have a significant impact on the farm credit banking system and that no evidence to that effect has ever been pre-

5. The court in *Greseth* also noted that in *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), the Supreme Court allowed the debt- or to obtain a discharge of hazardous waste cleanup obligations in the face of a strong federal policy to the contrary. 78 B.R. at 943.

sented. *See Greseth*, 78 B.R. at 943 ("[I]t is doubtful that a decision by the Court to allow surrender of the stock would bring dire consequences to the "Federal Land Bank.").

c. Application

We agree with the latter line of cases and hold that a Chapter 12 plan may provide for the forced redemption of land bank stock. We therefore affirm the decision of the trial court, although we do not entirely agree with its analysis.

At the outset, we cannot agree with the trial court that Chapter 12 and the FCA do not conflict. The FCA prohibits a borrower from redeeming stock without FCB approval; the Bankruptcy Code allows it. Hence, the conflict. However, we do agree with the trial court that the reasoning of the cases permitting forced redemption is more persuasive than the reasoning of cases like *Massengill* and *Shannon*.

First, we disagree with the *Shannon* court's conclusion that the FCA is more specific than Chapter 12 and that Congress therefore intended the terms of the FCA to prevail over conflicting terms in the Bankruptcy Code. *See Shannon*, 100 B.R. at 918 (provisions of the FCA, as modified by the Agricultural Credit Act of 1987, "are quite specific; they address exactly the condition under which borrowers may redeem their stock."). The FCA establishes a comprehensive farm credit system and governs anyone borrowing from a FCB whether a farmer, rancher, or even a rural homeowner. *See* 12 U.S.C.S. § 2017 (Supp. 1992). Chapter 12, meanwhile, applies only to a specific group of potential FCB borrowers—family farmers whose debts do not exceed $1,500,000. 11 U.S.C. §§ 109(f), 101(18). That the FCA is more detailed than the Bankruptcy Code does not mean it is "more specific" than Chapter 12.

We find no evidence of Congressional intent that the FCA is somehow intended to override contrary provisions of the Bankruptcy Code. On the contrary, Chapter 12 is emergency legislation intended to remedy a national crisis. It evidences Congress' concern with preserving the vanishing family farmer that long has been the backbone of American society. Chapter 12 contains powerful remedies designed to give the debtor maximum flexibility in restructuring debts. Thus, to the extent there is conflict between Chapter 12 and the FCA, we conclude that the former should prevail.

Secondly, we disagree with the *Shannon* court's analysis of the caselaw on this issue. Several of the cases holding that Chapter 12 debtors may force farm credit banks to redeem stock cite the bankruptcy court decision in *Massengill*, 73 B.R. 1008, which was reversed on appeal. The *Shannon* court asserts that these cases are therefore unpersuasive. 100 B.R. at 922. None of these cases, however, were decided by courts that were bound to follow the *Massengill* decision and each of them analyzed the issue independently; they did not merely follow *Massengill* without further analysis. Thus, the fact that the *Massengill* bankruptcy court decision was reversed does not undermine the persuasiveness of the decisions supporting the right of forced redemption.

We find further support for our conclusion that Chapter 12 debtors have the power of forced redemption in the Supreme Court's decisions in *Bildisco* and *Kovacs*. In each of those cases, the Court allowed Chapter 11 debtors to modify statutorily imposed duties representing important national interests. It is unlikely that Congress intended the provisions of the FCB to override those of Chapter 12 when the provisions of the Bankruptcy Code were held to override other federal statutes in *Bildisco* and *Kovacs*.

Finally, we are not persuaded by the argument that allowing forced redemption will undermine the farm credit system. If such is the case, there is no evidence of it. In neither the case at bar, nor any of the cases discussed above, has evidence that the farm credit system will be harmed by allowing forced redemption of stock been presented. Nor does common sense mandate such a conclusion. Thus, allowing Chapter 12 debtors to provide for redemption of stock will not impose such a hardship on the farm credit system that it will

come crashing down. Moreover, if such a massive problem develops, Congress is well aware of how to fix it.

## CONCLUSION

In the context of a Chapter 12 reorganization, we see no reason to treat farm credit stock differently from other types of security, nor to treat a borrower's obligations under the FCA differently from other statutorily imposed duties. We therefore hold that a Chapter 12 plan may provide for the forced redemption of federal farm credit bank stock. Accordingly, we AFFIRM.