**518**

Upon findings of fact and conclusions of law separately entered, it is

**In re Bryant S. CARTER, d/b/a Bryant Carter Dairy, Debtor.**

**Bankruptcy No. 93–4860–BKC–3P2.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 29, 1994.

the Court enters these findings of fact and conclusions of law:

### Findings of Fact

The association is a member-owned agricultural credit cooperative association which provides credit and credit-related services to eligible borrowers. The association is part of the farm credit system established by the Farm Credit Act ("FCA") 12 U.S.C. § 2001 et seq.

Debtor is a dairy farmer who qualifies as a family farmer under the bankruptcy code. Debtor received a loan from the association in the amount of $320,000.00 on December 7, 1988. The loan is secured by debtor's cattle, milk, contract rights, interests in the association and any proceeds of the security. The outstanding balance of the loan as of November 22, 1993, was $11,446.67.

On November 18, 1983, the association loaned debtor $48,000.00 secured by a mortgage on debtor's principal residence which is not located on the dairy farm. The outstanding balance of this loan as of November 22, 1993, was $36,056.22.

Pursuant to the FCA and the association's bylaws, debtor was required to purchase stock in the association at the time he received the livestock and mortgage loans. Debtor was required to purchase $1,545.00 of Class B stock in conjunction with the mortgage loan and $1,000.00 worth of Class C stock in conjunction with the livestock loan. Debtor also holds $24,082.11 of allocated capital surplus of the association.

Debtor filed his chapter 12 petition on October 27, 1993. On the same day debtor filed his first proposed chapter 12 plan which proposes to pay $10,000.00 over sixty months in full satisfaction of the debt owed the association. The association objected to debtor's proposed plan on numerous grounds, including the failure of the plan to account for the home mortgage loan obligation.

Debtor filed a modified plan on December 2, 1993. The modified plan proposes setoff of the value of the Class A and Class B capital stock and allocated surplus against the balance of the livestock loan in full satisfaction

Andrew J. Decker, III, Live Oak, FL, for debtor.

Gardner F. Davis, Jacksonville, FL, for Farm Credit of North Florida.

H. Jack Miller, Jacksonville, FL, Chapter 12 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court for confirmation of debtor's chapter 12 plan on December 9, 1993. Farm Credit of North Florida, ACA ("association") objects to confirmation of the plan. Upon the evidence presented,

of that debt. The plan also proposes applying the remaining stock and allocated surplus to the balance of home mortgage loan. Debtor proposes to pay the remainder of the mortgage over sixty months through the plan.

The association filed an objection to debtor's modified plan. At the confirmation hearing, all issues as to confirmation were resolved except the association's objection to confirmation based upon the proposed setoff.

## Conclusions of Law

The association argues that debtor may not setoff the value of his stock and equity interests in the association without violating the FCA and, because the forced retirement of stock and payment of allocated surplus violates the FCA, it also violates § 1225(a)(3) of the code which requires a chapter 12 plan be proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1225(a)(3). The association argues that pursuant to the FCA and the bylaws of the association only the association's board of directors possess the discretion to retire stock and, consequently, debtor does not have the right to force retirement of stock.

Conversely, debtor points to 11 U.S.C. § 1222(b)(2) which allows a chapter 12 debtor to modify the rights of its secured creditors, and 11 U.S.C. § 1222(b)(8) which provides a debtor with the option of selling or distributing property of the estate among those having an interest in the property. Debtor argues that the FCA does not limit these rights.

Given the apparently conflicting statutory schemes of the FCA and the bankruptcy code, the question the Court must answer is whether the statutes truly conflict and cannot be reconciled or whether the acts may be reconciled. If the acts may be reconciled the Court must determine how they coexist and whether a chapter 12 debtor may offset the amount of stock and equity interests in the association held against the obligations owed the association.

## Case Law

The Ninth Circuit bankruptcy appellate panel in *In re Davenport*, 153 B.R. 551 (9th Cir. BAP 1993) and the district court for the Southern District of Ohio in *In re Shannon*, 100 B.R. 913 (S.D.Ohio 1989) have held that the FCA and chapter 12 conflict cannot be reconciled because the FCA prohibits the forced retirement of stock while the bankruptcy code allows setoff. Both courts applied the maxim of statutory construction that the more specific statute controls over the more general regardless of priority of enactment and reached opposite results. The *Davenport* court held that the bankruptcy code is more specific and controls over the FCA, and the bankruptcy code allows a debtor to setoff farm credit stock. The *Shannon* court held that the FCA is the more specific act and prohibits setoff even in bankruptcy. Other courts that have addressed this issue have held that the acts are reconcilable, but again, the case law supports both a finding that setoff is allowable and that it is not. In *In re Massengill*, 100 B.R. 276 (E.D.N.C. 1988) the Court found that the FCA and the code could be reconciled. The court then held that excepting farm credit stock and equity interests from the application of § 1222(b)(2) would not inhibit a debtor's ability to restructure his obligations, because the debtor would be free to alter all other terms of his secured obligations. Thus the congressional intent underlying chapter 12 would be fulfilled while the congressional intent to stabilize the capital structure of the farm credit system would be protected by prohibiting surrender of farm credit stock and equity interests. The *Massengill* court reversed the bankruptcy court's allowance of setoff and concluded that a chapter 12 debtor could not setoff the amount of farm credit stock and equity interests against the amount owed the farm credit association.

The majority of courts have held that the code and the FCA are reconcilable and have allowed chapter 12 debtors to offset their farm credit stock and equity interests to decrease the amount of debt owed to a farm credit association. *See, In re Neff*, 89 B.R. 672 (Bankr.S.D.Ohio 1988); *In re Cansler*, 99 B.R. 758 (W.D.Ky.1989); *In re Wright*, 103

B.R. 905 (Bankr.M.D.Tenn.1989); *In re Arthur,* 86 B.R. 98 (Bankr.W.D.Mich.1988); *In re Ivy,* 86 B.R. 623 (Bankr.W.D.Mo.1988). These courts have held that the FCA applies in the ordinary course of business to control the financial relationships of the institutions within the farm credit system and the individual borrower's relationships within that system, but in the unusual case of the chapter 12 the ordinary course rules of the FCA do not limit the broad powers given the chapter 12 debtor to restructure his debt.

### Reconciliation

 This Court agrees with the majority view that the bankruptcy code, and specifically chapter 12, may be reconciled with the FCA. In interpreting the two statutory schemes, the Court applies the rules of interpretation announced by the Supreme Court in *Morton v. Marcari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). In *Morton* the Court held that courts are "[n]ot at liberty to pick and choose among congressional enactments and when statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* at 551, 94 S.Ct. at 2483. Thus courts must interpret statutes to avoid conflict and give effect to congressional intent. *Id.* In determining whether statutes may coexist, the Court must first look to the problem the statute was intended to remedy to ascertain the purpose behind the enactments. *Id.* at 550, 94 S.Ct. at 2482.

Congress enacted chapter 12 to give small family farmers an opportunity to reorganize their secured debt, allowing them to keep their land and way of life. H.R.Rep. No. 958, 99th Cong., 2nd Sess. 48–51 (1986) *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5249–52. Chapter 12 was enacted in 1986 as temporary pilot legislation with a sunset provision of 1993 which has recently been extended to 1998. *Id.;* 103 P.L. 65, 1993 H.R. 416, 107 Stat. 311. The act is limited in its application; applying only to small family farmers with farm related debt of $1.5 million or less. *Id.;* 11 U.S.C. § 101(18). In order to facilitate restructuring of debts Congress gave the chapter 12 debtor broad powers to alter his obligations. H.R.Rep. No. 958, 99th Cong., 2nd Sess. 48–51 (1986) *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5249–52; *Davenport,* 153 B.R. 551 (Bankr. 9th Cir.1992).

The FCA, on the other hand, creates an entire system for providing agricultural credit. The FCA established the banks and associations of the Farm Credit System and the federal agency to supervise the system. H.R.Rep. No. 1287, 96th Cong., 2d Sess. 15–17 (1980) *reprinted in* 1980 U.S.Code Cong. & Admin.News 7095, 7098–7101. The stated purpose of the FCA is to continue to improve the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and to encourage farmer and rancher borrower participation in the management of a permanent system of credit for agriculture. 12 U.S.C. § 2001(a); 12 U.S.C. § 2001(b).

Given the different purposes behind the enactment of the FCA and chapter 12, a crisis in the small family farming sector of the economy and providing credit for the entire agricultural and rural economy, the Court finds that the statutes are reconcilable. The Court also hold that reconciliation of the statutes leads to the conclusion that a chapter 12 debtor may offset an amount equal to the stock and equity interests held against the debt owed the association.

### Setoff

Congress failed to address in either the FCA or in chapter 12 whether the FCA limits a chapter 12 debtor's ability to alter his obligations. The statutes do not refer to one another, thus Congress has not evidenced an intention that the FCA apply in bankruptcy or that FCA is an exception to bankruptcy. Nor does the legislative history aid in answering this question. *See, In re Neff,* 89 B.R. 672 (noting that the Court did not find any reference to chapter 12 in FCA or in its legislative history).

The closest the legislation comes to addressing bankruptcy is in 12 U.S.C. § 2202a and § 2202b which allows a farm credit association to retire stock for application against the balance of a distressed loan if setoff is more cost effective than foreclosing the loan.

In enacting these sections in 1987, Congress received testimony from the president and chief executive officer of the St. Paul Farm Credit Bank. The president described that bank's experience with restructuring loans and concluded that by restructuring, "We have increased borrower motivation to pay, bought additional time and have evidence that chapter 12 bankruptcy fillings are significantly lower in our four states than in neighboring states." H.R.Rep. No. 295(I), 100th Cong., 1st Sess., 63 (1987), *reprinted in* 1987 U.S.Code Cong. & Admin.News 2723, 2734. This is the only reference to chapter 12 in the legislative history found by the Court.

If any inference is to be drawn from this, it may support the proposition that the FCA does not apply to limit a chapter 12 debtor's options in restructuring debt, because the testimony indicates that bankruptcy is an alternative to restructuring through the FCA rather than interpreting the FCA as the exclusive method for restructuring farm credit debt. However, the Court is mindful of the Supreme Court's admonishment in *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 524–525, 104 S.Ct. 1188, 1194–1196, 79 L.Ed.2d 482 (1984) that no inference may be drawn from a reference to a judicial standard in legislative history without some affirmative indication from Congress that one standard is being adopted over another.

In *Bildisco,* the Supreme Court found that the failure of Congress to expressly except a collective bargaining agreement from the executory contract provisions of the code, while making other specific exceptions, indicated that Congress intended § 365 apply to collective bargaining agreements. The Supreme Court recognized that when Congress intends to make an exception to the code it does so expressly. For example, Congress overruled *Bildisco* by enacting 11 U.S.C. § 1113 which excepts collective bargaining agreements from acceptance or rejection pursuant to § 365. Similarly, Congress has expressly forbidden lien stripping in chapter 13 for home mortgages with the enactment of § 1322(b)(2). *Nobelman v. American Savings Bank,* ── U.S. ──, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

Applying this principle in this case, if the FCA is to limit a debtor's ability to restructure debt through chapter 12, Congress must make an express and precise pronouncement that it intends to so limit a debtor's options. *In re Neff,* 89 B.R. 672 (Bankr.S.D.Ohio 1988); *In re Cansler,* 99 B.R. 758 (W.D.Ky. 1989). Congress has failed to make such a statement. Congress has not created a bankruptcy exception in the FCA nor has Congress created any exceptions to § 1222(b)(8). Without an express exception to chapter 12 for the FCA, the Court will not infer one. Accordingly, the Court holds that in the ordinary course of business the FCA prevents borrowers from retiring their stock; however, in the extraordinary circumstances of a chapter 12 case, the FCA does not prevent debtors from altering their obligations by setting off the value of stock and equity participation of the association against the outstanding amounts owed the association.

In addition, this Court agrees with the court in *Davenport* that there is no reason to draw a distinction between a debt owed to a farm credit association and any other obligation which is subject to a chapter 12 debtor's powers. A chapter 12 debtor has the ability to surrender collateral in satisfaction of a secured obligation, and there is no reason to draw a distinction between the ability to surrender farm credit collateral and the ability to surrender other collateral. 11 U.S.C. § 1225(a)(5)(C). Facilitating the debtor's "fresh start" by allowing the debtor flexibility in altering and reorganizing obligations is the essence of bankruptcy. Bankruptcy changes the usual rules, and the FCA has not been excepted from the code.

*Value*

■ The association argues that the amount debtor may setoff against the outstanding loan balance must be discounted to fair value pursuant to 12 U.S.C. § 2162. However, § 2162 first requires the association to retire stock at par value and then allows the association to discount stock retired out of turn "at a rate determined by the institution" to reach its present value. 12

U.S.C. § 2162(a), 12 U.S.C. § 1262(d)(4)(A), 12 U.S.C. § 2162(d)(4)(C).

The Fourth Circuit addressed the value of stock in the forced retirement situation in *In re FCX, Inc.*, 853 F.2d 1149 (1988), *cert. denied, Universal Cooperative, Inc. v. FCA, Inc.*, 489 U.S. 1011, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). In *FCX*, a chapter 11 case, the Fourth Circuit affirmed the bankruptcy court's determination that the debtor was entitled to credit the face amount of stock and equity interests in a farm credit association against the obligation owed the association. The Fourth Circuit reasoned that if the creditor chose to redeem the stock today it would be valued at face value, but if the creditor chose to wait to redeem the stock then the value would be discounted and the stock would be valued at something less than face value. Because the exclusive authority to retire or not retire the stock resides in the association and causes this fluctuation, the Court determined that the creditor should bear the risk of loss resulting from a decision to wait to retire the stock.

Like the *FCX* court, this Court is persuaded that debtor is entitled to credit for the face amount of his class A and class B stock and allocated surplus because the association is likewise entitled to receive that benefit upon exercise of its discretion to retire the stock and equity. Under § 2162, and in the case of a distressed loan under § 2002, the association has the authority to retire stock and equity interests at face value. Thus the Court holds that debtor should receive credit for the face value of the stock and equity interests.

The association argues that the different types of stock and equity interests held by debtor require different treatment because they are subject to certain retirement schedules and treatment under the FCA. Because the FCA provides the association with the discretion to set the discount rate and the ability to redeem stock, the Court is convinced that the different types of stock and equity interests do not change the foregoing analysis.

### Lien Retention and Good Faith

The association argues that allowing setoff of the stock and equity interests violates 11 U.S.C. § 1225 because it fails to retain its lien and fails to receive value equal to the amount of its secured claim. The association also challenges debtor's proposed plan based on a lack of good faith as evidenced by the alleged violation of the FCA and debtor's modification to this plan proposing setoff.

■ Both arguments lack merit. Section 1225(a)(5) provides a chapter 12 debtor with three options in dealing with his secured creditors. One of these options is the surrender of the property. The association would have the Court construe § 1225(a)(5)(A) as an exclusive remedy which it is not. Section 1225(a)(5)(C) allows the court to confirm a plan, where the debtor proposes surrender of collateral in satisfaction of the secured portion of a claim. Thus debtor's proposed setoff does not violate § 1225(a)(5) and the association's argument lacks merit.

■ A debtor's good faith is determined by examining the totality of the circumstances in each case. *In re Kitchens,* 702 F.2d 885 (11th Cir.1983). The Court does not find any indication of a lack of good faith on the part of the debtor and specifically finds that bad faith cannot be prefaced on debtor's use of § 1225(a)(5)(C). Taking advantage of the options provided in the code does not indicate bad faith. *See, In re Sar–Manco, Inc.,* 70 B.R. 132 (good faith requires the court to refuse to condone abuse of process). If using the options provided by the code to restructure debt did indicate bad faith, then some provisions of the code would be unusable and invalid and this could not be the intent of the drafters of the code.

### Conclusion

The Court holds that the Farm Credit Act and the Bankruptcy Code, specifically chapter 12 of the code, are reconcilable. The provisions of the Farm Credit Act which allow redemption of stock only on the exercise of discretion of the association do not act to limit a chapter 12 debtor's ability, pursuant to § 1222(b)(2), to alter his obligations to the association. Accordingly, debtor may setoff the face amount of his class A and class B stock and allocated surplus in the amount of $26,627.11 against the amount owed on the livestock loan and the home mortgage loan. Debtor's setoff does not vio-

**524**

late the provisions of § 1225(a)(5) or § 1222(a)(3).

The Court will enter a separate order confirming debtor's plan in accordance with these findings of fact and conclusions of law.

### ORDER OVERRULING OBJECTION TO CONFIRMATION AND ORDER CONFIRMING PLAN

Upon Findings of Fact and Conclusions of Law separately entered, it is

ORDERED

1. The objection of Farm Credit Association of North Florida to confirmation of debtor's chapter 12 plan as amended December 1, 1993, is overruled.

2. Chapter 12 plan, as amended December 1, 1993, is confirmed.