818 F.2d 1503
 61 A.F.T.R.2d 88-496, 88-1 USTC P 9225,
16 Collier Bankr.Cas.2d 1341,
Bankr. L. Rep. P 71,859
 In re CAMINO REAL LANDSCAPE MAINTENANCE CONTRACTORS, INC., Debtor.
UNITED STATES of America, Plaintiff-Appellant,
v.
CAMINO REAL LANDSCAPE MAINTENANCE CONTRACTORS, INC.,
Defendant-Appellee.
In re HADRIAN CONSTRUCTION, INC., Debtor.
UNITED STATES of America, Plaintiff-Appellant,
v.
HADRIAN CONSTRUCTION, INC., Defendant-Appellee.
In re ARMOUR OIL COMPANY, Debtor.
UNITED STATES of America, Plaintiff-Appellant,
v.
ARMOUR OIL COMPANY, Defendant-Appellee.
 Nos. 86-6165, 86-6174, 86-6310.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1987.
Decided June 5, 1987.
 
 Raymond W. Hepper, Washington, D.C., for plaintiff-appellant.
 Diane H. Sparrow, Richard R. Ravreby, Carlsbad, California, David S. Kupetz, Los Angeles, California, for defendants-appellees.
 Appeals from the United States District Court for the Southern District of California.
 Before SNEED, BOOCHEVER and THOMPSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 These three cases, arising out of chapter 11 reorganizations, pose a single issue. That is, what rate of interest on deferred payments of federal taxes will provide the government with payments having a present value equal to the allowed amount of its claim, as required by 11 U.S.C. Sec. 1129(a)(9)(C). We hold that the debtor must pay the government interest at the rate the debtor would pay a commercial lender for a loan of equivalent amount and duration, considering the risk of default and any security. Accordingly we uphold the judgment of the Bankruptcy Appellate Panel in the matter of Armour Oil Co. (Armour). We reverse the judgments of the district court in the matters of Camino Real Landscape Maintenance Contractors, Inc. (Camino Real) and Hadrian Construction, Inc. (Hadrian).
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 Each of the three debtors in these consolidated cases filed a petition for reorganization under chapter 11 of the Bankruptcy Code. The government filed a proof of claim for unpaid taxes in each proceeding. The government's claims were entitled to seventh priority. 11 U.S.C. Sec. 507(a)(7).[1] The debtors submitted plans of reorganization that proposed to defer payment of the tax claims under 11 U.S.C. Sec. 1129(a)(9)(C). That section permits a court to confirm a plan if the holders of tax claims consent, or if they "will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim." Id.
 
 
 3
 The government objected to the rates of interest on tax payments that were proposed under the three plans. Hadrian and Camino Real proposed to pay interest at a rate equal to the rate of increase in the Consumer Price Index. Armour proposed to pay interest at the treasury bill rate. The government requested interest at the rate set by 26 U.S.C. Sec. 6621 for delinquent taxes. This rate was 11% on the effective dates of the plans in Hadrian and Camino Real, and 10% on the effective date of the plan in Armour.
 
 
 4
 In Hadrian, the bankruptcy court fixed the rate at 9% on the government's claim. The court selected the 9% rate after noting that the yields on treasury bonds, notes, and bills were 9.3%, 9.11%, and 9.8%. Excerpt of Record (E.R.) at 14-15. The same court approved the plan proposed by Camino Real after ordering that debtor to pay interest at 9% on the government's claim. The court noticed that treasury notes yielded 8.4% at the time. E.R. at 47. A different bankruptcy court, in approving the plan proposed by Armour, ordered the debtor to pay 8% interest on the government's claim. That court considered the treasury bill rate (7.02%), E.R. at 105, the Sec. 6621 rate (11%), E.R. at 111-12, current market conditions, id., interest rates generally paid by borrowers, E.R. at 113, and the fact that the government's claim was secured, E.R. at 113-14.
 
 
 5
 The government appealed to the district court the Hadrian and Camino Real orders. The district court consolidated the cases and affirmed without an opinion. The government appealed the Armour order to the Ninth Circuit Bankruptcy Appellate Panel. The panel affirmed, relying on its prior decision in In re Welco Industries, Inc., 60 B.R. 880 (Bankr. 9th Cir.), appeal dismissed for lack of juris., No. 86-3918 (9th Cir.1986). The government then appealed all three decisions to this court, which ordered the appeals consolidated.
 
 II.
 STANDARD OF REVIEW
 
 6
 We review de novo the district court's decision. Hence we review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. In re Acequia, Inc., 787 F.2d 1352, 1357 (9th Cir.1986). We review the bankruptcy appellate panel's decision in the same fashion. In re Center Wholesale, Inc., 759 F.2d 1440, 1445 (9th Cir.1985).
 
 III.
 DISCUSSION
 
 7
 A. Calculating Present Value.
 
 
 8
 The government contends that under none of the plans will it receive that to which it is entitled, viz., "deferred cash payments ... of a value, as of the effective date of the plan, equal to the allowed amount of [its tax claims]," 11 U.S.C. Sec. 1129(a)(9)(C). We agree with regard to the plans proposed by Hadrian and Camino Real. We turn to the legislative history for support. The House Report says that "value, as of the effective date of the plan," as used in Sec. 1129(a)(9)(C) and several other sections of the Bankruptcy Code, "indicates that the promised payment under the plan must be discounted to present value as of the effective date of the plan." H.R.Rep. No. 595, 95th Cong., 1st Sess. 408, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6364. The joint explanatory statement of Senator DeConcini and Representative Edwards confirms that a present value analysis was intended. 124 Cong.Rec. 32,406, 34,006 (1978).
 
 
 9
 A standard bankruptcy treatise explains what a present value analysis entails.
 
 
 10
 The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.
 
 
 11
 5 Collier on Bankruptcy p 1129.03[f][i], at 1129-65 (15th ed. 1987). If the government receives interest at a rate equal to the appropriate discount rate, its aggregate receipts over the payment period will equal the present value of its tax claims. This is what Sec. 1129(a)(9)(C) requires.
 
 
 12
 All agree the above quotation from Collier on Bankruptcy states the proper rule. Both of the circuit courts that have considered the meaning of Sec. 1129(a)(9)(C) have relied on it. United States v. Neal Pharmacal Co., 789 F.2d 1283, 1285 (8th Cir.1986); In re Southern States Motor Inns, Inc., 709 F.2d 647, 651 (11th Cir.1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). The Ninth Circuit Bankruptcy Appellate Panel also quoted it. Welco, 60 B.R. at 882. Indeed, the government relies on it. Appellant's Opening Brief at 30.
 
 
 13
 Unanimity disappears upon application, however. The government, for example, argues that the proper interest rate for deferred taxes is determined by a very specialized market. That market, it insists, must be determined by applying 26 U.S.C. Sec. 6621. The proper rate is that which this section makes generally applicable to deferred federal taxes. Id. at 39; Appellant's Reply Brief at 7 n. 3.
 
 
 14
 We reject the government's suggestion that the interest rate on deferred taxes for purposes of Sec. 1129(a)(9)(C) is fixed as Sec. 6621 provides. The legislative history of Sec. 1129(a)(9)(C) indicates that the rate of interest on deferred taxes should be the rate of interest that the debtor would pay to borrow a similar amount on similar terms in the commercial loan market. The debtor's characteristics determine the interest rate. The creditor's characteristics are irrelevant. Hence the fact that a particular debt arises from taxes due to the government does not affect the appropriate interest rate. It continues to be determined by the commercial loan market.
 
 
 15
 B. The Relevance of the Interest Rate on Treasury Obligations.
 
 
 16
 The government is correct when it argues that a bankruptcy court may not calculate the Sec. 1129(a)(9)(C) rate on the basis of interest rates paid on treasury obligations. The treasury rate is the government's cost of borrowing, which is relatively quite low because to the lender the government's obligation is a short-term, low risk investment. The obligation of a private borrower is quite different; its creditworthiness is not the same as the federal government's. It cannot borrow money on the favorable terms available to the government.
 
 
 17
 Thus, in Hadrian and Camino Real the designated rate of interest is incorrect. In both the bankruptcy court relied on the rate of interest on treasury obligations. The court slipped into this position by reasoning that the government could borrow at the treasury rate to replenish its funds while it waited for the debtor to make payments. Congress did not provide for such an approach. Under the bankruptcy court's approach, the government would incur an unconditional obligation to repay the money it was required to borrow, and would receive in exchange only an inherently risky promise by the debtor to repay the same amount over the applicable time period at essentially the same rate paid by the government on its obligation. The government would be worse off as a result of the exchange. To be properly compensated, it must receive the rate of interest based on the debtor's cost of borrowing, not the government's. See Neal, 789 F.2d at 1286. There is no indication that Congress meant to subsidize debtors undergoing reorganization by making available to them the government's own favorable rate of interest.
 
 
 18
 Nevertheless, the government overstates its case when it declares that "rates applicable to Treasury obligations ... are wholly irrelevant." Appellant's Opening Brief at 34. The interest rate on treasury bills is one indicator of the range of prevailing market interest rates. It is an appropriate starting point for calculating the Sec. 1129(a)(9)(C) rate of interest. See 5 Collier on Bankruptcy p 1129.03[f][i], at 1129-63 n. 45. Moreover, the government's preferred rate, the Sec. 6621 rate, now will be based on treasury rates. 26 U.S.C. Sec. 6621(a)(2). Rates of interest on treasury obligations reflect the proper return on a riskless loan after adjustment for inflation. Only the estimated cost of deferring present use by the lender and the projected rate of inflation influence this rate. A lender to one other than the government also must include in his return a significant element to compensate for the risk of default. It follows that treasury rates are relevant to--but not the same as--the Sec. 1129(a)(9)(C) rate.
 
 
 19
 C. The Relevance of the Interest Rate on Delinquent Federal Income Tax Payments.
 
 
 20
 At the times when the rates were set in these cases the Sec. 6621 rate was based on the prime rate, the most favorable short term rate the commercial banks charged their most trustworthy customers. While it is true the Sec. 6621 rate compensates the government more adequately than would the treasury bill rate, it remains true that Congress did not make it the Sec. 1129(a)(9)(C) rate. Both the Eighth and Eleventh Circuits have refused to adopt the Sec. 6621 rate. It is not an appropriate proxy for the relevant market rate. The Sec. 6621 rate could lag behind the true market rate and thus be disadvantageous to the government. Moreover, it does not take account of the duration of the deferment of present use, the security, or the risk. Finally, Congress used the phrase "value, as of the effective date of the plan" in other sections of the Bankruptcy Code that have nothing to do with the deferred payment of taxes. Congress presumably intended the phrase to have a single meaning in all cases, including this one.