**In re JANSSEN CHAROLAIS RANCH, INC., Debtor.**

**Bankruptcy No. 86–40693.**

United States Bankruptcy Court, D. Montana.

Oct. 28, 1987.

James A. Patten, Billings, Mont., for debtor.

A. Lance Tonn, Miles City, Mont., for Powder River Bank.

Malcolm Goodrich, Billings, Mont., for FLB.

Dunlap and Caughlan, Butte, Mont., Trustee.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 28th day of October, 1987.

Pending in this Chapter 12 proceeding is the Debtor's Modified Chapter 12 Plan which was amended as a result of this Court's decision of May 5, 1987, *In re Janssen Charolais Ranch, Inc.*, 73 B.R. 125, 4 Mont.B.R. 290 (Bankr.D.Mont.1987). In that decision, this Court rejected the Debtor's Plan on the issue of appropriate market rate of interest and loan term. The Court further deferred any decision on the issue of feasibility. As a sequel to the first Plan, the Debtor now proposes to pay Powder River Bank (Bank) a rate of interest equal to 10¾% over 20 years.

Hearing on the Modified Plan developed that the Debtor chose the 10¾% rate as

being a rate available to a farm borrower of Federal Land Bank (FLB). Debtor's principal stockholder (the Debtor is a closely held family farm corporation) testified that the projected income and expense statement, while placing strain on the budget because of increased payments under the Plan to the Bank, is realistic, especially in light of projected increased cattle prices. The Modified Plan proposes an increase of Bank payment from $23,882.51 per year to $35,534.33, so as to retire the Bank debt of $287,661.00 in full over the 20 year term. Income from sale of cattle, grain and government subsidy payments range from a low of $103,363.00 (1988) to a high of $160,188.00, and after payment of expenses projects sufficient income to pay the secured creditors in full and unsecured creditor $3,608.33 per year for three years from the net disposable income, so that each unsecured creditor will likewise be paid in full. The Modified Plan also commits the Debtor to maintain its cattle herd at present levels (with possible small increases) and has provided an expense item for repair or replacement of machinery to avoid a deterioration of part of the Bank's collateral through depreciation. The Bank is the only creditor which has filed objection to the Plan. From the evidence, it is undisputed the Bank is oversecured, since its debt is fully collateralized in land by first and second liens, cattle and machinery valued at a total of $541,677.00. 73 B.R. at 125, 4 Mont.B.R. at 290. That being true, the Bank is entitled under 11 U.S.C. 506(a) to accrued interest, costs and reasonable attorney fees to the date of confirmation. *In re Glenn*, 796 F.2d 1144 (9th Cir.1986).

In discussing the interest rate issue in the previous opinion, the Court relied upon *In re Welco Industries*, 60 B.R. 880, 882–83 (9th Cir. BAP 1986). Since the original decision, the Ninth Circuit Court of Appeals has now rendered a decision in three consolidated bankruptcy cases on the issue of "what rate of interest on deferred payments of federal taxes will provide the government with payments having a present value to the allowed amount of its claim as required by 11 U.S.C. § 1129(a)(9)(c)". *In re Camino Real*

*Landscape Maint. Contractors, et. al.*, 818 F.2d 1503, 1504 (9th Cir.1987). The issue of present value is the same in the case *sub judice*, for, as the Circuit Court noted, " * * * Congress used the phrase 'value, as of the effective date of the plan' in other sections of the Bankruptcy Code that have nothing to do with deferred payment of taxes" so that "Congress presumably intended the phrase to have a single meaning in all cases, including this one. *Neal [U.S. v. Neal Pharmacal Co.]*, 789 F.2d [1283] at 1288–89 [8th Cir.1986]; *Southern States [In re Southern States Motor Inns]*, 709 F.2d [647] at 651–52, n. 6 [11th Cir.1983]". *Id.* at 1506–07. The Circuit Courts which have thus rendered a decision on the issue are in consistent agreement that the proper market rate of interest must be decided on a case-by-case basis, from a standard which applies a rate "the debtor would pay a commercial lender for a loan of equivalent amount and duration, considering the risk of default and any security". *Id.* at 1504. *Camino Real* made other observations in adopting the "open market" standard, namely, (1) the decision should be made by the Bankruptcy Court on a case-by-case basis, *Id.* at 1508; (2) the debtor's characteristics, i.e., the nature of collateral and risk, determine the rate not the creditor's characteristic, such as cost of money or loan costs, *Id.* at 1506; and (3) the standard of open market is adopted to determine the "value" of the deferred cash payments, irrespective of the financial burden a debtor would have to bear in order to obtain a hypothetical new loan, the latter being irrelevant under the Code. *Id.* at 1505, 1507, n. 2.

" * * * the government concedes in principle that the § 1129(a)(9)(c) rate should reflect the term of deferment of present use and risk of default, as affected by any security * * *." *Id.* at 1507.

For example, *Camino Real* stated in approving a reduction of the rate due to the secured nature of the claim:

"The adjustment was proper because market interest rates are usually lower when a loan is secured. *See Neal*, 789 F.2d at 5288, n. 11." *Id.* at 1507–08.

■ Admitting that the proper rule on interest rates is unanimous among the courts and text authorities, *Camino Real* nevertheless recognizes such "Unanimity disappears upon application * * * ". *Id.* at 1505. *See,* e.g., *In re Orosco,* 77 B.R. 246, 252–56 (Bankr.N.D.Cal.1987), holding:

"A number of the secured claimants argue that debtor, being the subject of proceeding under Chapter 11 of the Bankruptcy Code and having the accompanying record of loan defaults, is not a qualified borrower under their standard lending practices and that this fact must be taken into account in the setting of the appropriate interest rate. In support of this contention, the creditors refer to the 'debtor's characteristics' language in the *Camino Real* opinion. The Court does not read the Opinion in this manner. If this were the test, every Chapter 11 debtor would ipso facto be required to pay interest at a rate in excess of market rate without regard to the debtor's financial condition at the time of confirmation, the security, the term of deferment, or the risk of a future default, the very factors which the Ninth Circuit Court emphasized as being of primary relevance."

*Orosco* engaged in an examination of the security and potential risks to the lender in fixing a variable rate of 1½% over a Bank of America reference rate. *Neal,* supra, 789 F.2d at 1286, however, held that since value is to be fixed "as of the effective date of the plan", the statute contemplates the use of a fixed interest rate, as opposed to a variable rate, since a variable or floating rate is not capable of allowing for a determination of present value. A fixed rate is thus mandated by the Code. *In re Lewis Industries,* 75 B.R. 862, 4 Mont.B.R. 434, 444, N. 2 (Bankr.D.Mont.1987).

■ Turning to the evidence in this case and applying it to the above discussed standard on market rate of interest, I find the applicable rate proposed in the Plan at 10¾% is an appropriate rate of interest. At the time of the hearing, the prime rate of interest was 8¼% (now accelerated to 9%), yet the Debtor proposes a rate which is 2½% in excess of the prime rate. Prime rate is a commercial lending rate which certainly has an impact on the open market rate. *Welco,* 60 B.R. at 883. The Bank's testimony failed to meet the appropriate standard set forth in *Camino Real,* for the Bank's testimony was based on creditor characteristics, i.e., its cost of money. The Bank would charge 11½%, fixed by adding ½% over the Bank's index, which is computed at its cost of money at 5¾% plus a profit spread of ¾%. As noted above, the Bank is fully secured, and the Debtor's projections show that the Plan payments can be made as proposed. Thus, not only is the risk of default lessened, but the risk of loss is virtually nil. Further, since a major portion of collateral is land, a 20 year repayment is within the range afforded in the open market. *See,* e.g., *In re Indreland,* 77 B.R. 268, 274, 4 Mont. B.R. 492, 503–04 (Bankr.D.Mont.1987), applying *In re Robinson Ranch,* 75 B.R. 606, 610, 4 Mont.B.R. 414, 418 (Bankr.D.Mont.1987), which held:

"In this case, evidence of the debtor, which I find credible, shows the prevailing rate is 9% on 20 year contracts for deed, with interest rates on commercial loans fixed at 2% over prime at 8¼%."

In a subsequent case, *In re Martin,* 78 B.R. 598, —— Mont.B.R. —— (Bankr.D. Mont.1987), the Court concluded from the evidence that a 20 year term was not reflective of market unless structured on a 20 year payment with a ten year balloon payment. In this case, I find from the evidence that a 20 year loan is available on the open market from a commercial lender when the debt is less than 60% of the value of the collateral. *See also, In re Martin (Heart L Ranch),* 66 B.R. 921 (Bankr.D. Mont.1986) (debt secured by agricultural land may be extended over 20 years). I note the first mortgage holder FLB has a 35 year term on its loan.

I conclude the rate of interest proposed in the Modified Plan of 10¾% is fair market rate of interest and the term of repayment over 20 years is likewise reasonable. I further conclude, based on the Debtor's projection of income and expenses, that the

Plan is feasible, and all payments proposed to be made under the Plan can be so made.

IT IS ORDERED:

(1) The Debtor's Amended Chapter 12 Plan is confirmed;

(2) The Debtor shall pay to the Trustee all sums provided in the Plan, at the time provided;

(3) The value of collateral securing debts due holders of secured claims is fixed at the values stated in the Plan;

(4) Upon completion of the Plan according to its final terms, all judgments and U.C.C. filings shall be satisfied; and

(5) The life of this Plan is three years.