**In the Matter of Edward O'Neal RICE, Debtor.**

**Bankruptcy No. 93–82095.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Aug. 19, 1994.

H. Neil Taylor, Jr., Phil Campbell, AL, for debtor Edward O'Neal Rice.

Eddie Beason, Fine & McDowell, Russellville, AL, for Citizens Bank & Sav.

William Chenault, III, Chenault, Hammond & Hall, Decatur, AL, for White and Son Enterprises, Inc.

Jan Eberhardt, Chapter 12 Trustee, Parsons, Eberhardt & Blankenship, Huntsville, AL.

### ORDER

CADDELL, Bankruptcy Judge.

This matter is before the Court on confirmation of the Third Amended Plan of Reorganization filed by the debtor. Objections to the proposed plan were filed by Citizens Bank & Savings, White and Son Enterprises, Inc., and the trustee, Jan Eberhardt. The hearing in this matter was held on the 21st day of July, 1994.

From the evidence presented, the Court makes the following findings of fact. In 1991, the debtor obtained a loan from Citizens Bank & Savings for the purpose of constructing poultry houses. The poultry houses, which were built by White and Son Enterprises, Inc., secured the loan of Citizens Bank & Savings.

In 1992, the gross income generated from the poultry operation was approximately $51,000.00. The income was divided equally between Citizens Bank & Savings and the debtor. The expenses associated with the operation of the poultry houses were paid from the proceeds given to the debtor.

The debtor began experiencing financial problems and filed for relief under Chapter 12 of the Bankruptcy Code on September 20, 1993. The debtor filed his plan on January 20, 1994, and filed his first amendment to the plan on April 7, 1994. The amendment pro-vided that the debtor would surrender certain collateral to Citizens Bank & Savings. Citizens Bank filed an objection to the amendment on May 4, 1994.

On April 18, 1994, the Court entered an order establishing the value of the debtor's real property, poultry operation and dairy barn. On June 6, 1994, the debtor filed his Second Amended Plan of Reorganization. This plan basically adopted the values set forth in the Order dated April 18, 1994, and proposed to surrender additional collateral to Citizens Bank & Savings.

At the confirmation hearing held on June 8, 1994, the debtor agreed to amend his plan for the third time and to file a new statement of affairs. Due to the poor health of the debtor, the Court allowed the debtor to testify as to the feasibility of the amended plan even though the hearing on confirmation was technically continued.

On June 23, 1994, the debtor filed his Third Amended Plan of Reorganization, and the confirmation hearing was held on July 21, 1994. Citizens Bank & Savings, White and Son Enterprises, Inc., and the trustee filed objections to the Third Amended Plan.

The objection filed by Citizens Bank & Savings is based upon the debtor's proposal to pay this indebtedness for fifteen years at eight and a half percent interest.[1] The bank argues that it does not make loans on poultry houses for more than ten years, and that the interest rate must be variable and at least two percent above the prime lending rate.

██ Section 1222(b)(2) of the Bankruptcy Code allows a debtor through his Chapter 12 plan to modify the rights of a secured creditor, and the Court is not bound by the terms and conditions the lender dictates to its other customers. However, the lender's secured position/collateral should be of such that the risk factors involved with modifying the terms of the indebtedness are minimal. *In re Janssen Charolais Ranch, Inc.*, 83 B.R. 743 (Bkrtcy.D.Mont.1987).

In *Janssen*, the Chapter 12 debtor, who owned a cattle operation, proposed to pay the

---

1. The original terms of the note were ten years at eight and one half percent interest for the first twelve months. The interest was then subject to a variable rate based on the prime lending rate.

secured creditor for 20 years at ten and three-fourths percent interest. The secured creditor, who was oversecured, did not accept this rate because other similar situated customers were charged a higher interest rate. The court held that what constituted

> a proper market rate of interest had to be determined on a case by case basis, from a standard which applies a rate the debtor would pay a commercial lender for a loan of equivalent amount and duration, considering the risk of default and any security. *Id.* at 744.

The court accepted the proposed interest rate as being reasonable in light of the debtor's projected income and expenses, the stability of the cattle market, and that the collateral would retain its value at a rate equal to the rate at which the debt was being serviced. The court held that the risk factors (default and deteriorating value of the security) were minimal. The court confirmed the debtor's Chapter 12 plan.

In *In re Butler*, 97 B.R. 508 (Bkrtcy. E.D.Ark.1988), a Chapter 12 debtor proposed to make payments to two secured lienholders in twenty annual installments at eleven percent interest. Farm Credit, who had liens on three parcels of real estate, objected to the twenty year repayment period, but its objection was overruled because the rate of interest proposed in the plan exceeded the current market rate. The higher interest rate provided extra protection to the lienholder.

First National Bank of Eastern Arkansas, who had liens on real estate and farming equipment, objected to the twenty year "pay out" period. The court held

> that because of the depreciable nature of the farm equipment partially securing the First National's claim, First National would not remain fully secured while payments under the restructured payment terms proposed by the plan would be made. *Id.* at 512.

■ In the present case, the lien of Citizens Bank & Savings is primarily secured by the poultry houses. The evidence shows that the houses are approximately two years old and have an average "life expectancy" of 10 years. The debtor proposes to repay the indebtedness over a period of fifteen years. It is the opinion of this Court that the poultry houses will not maintain their value at a rate equal to the rate the debt is being serviced. The proposed fifteen year term is not acceptable to this Court.

■ The plan also proposes to pay Citizens Bank & Savings eight and one-fourth percent interest over the fifteen year period. The debtor testified that a "fair market rate is prime plus two".

The bank's representative testified that the present prime rate of interest is seven and one-fourth percent. The current lending rate is at least nine and one-fourth percent. It is the opinion of this Court that because of the depreciable nature of the collateral, the debtor's poor health, and the fact that the debtor has only operated the houses for two years, the interest rate as proposed in the plan is not sufficient to nullify the risk factors.

■ Citizens Bank & Savings also argues that the value of any property that is to be disposed of under the plan must be determined as of the effective date of the plan. 11 U.S.C. § 1225(a)(5)(B)(i). Specifically, the value of the poultry houses as set forth in the Court's Order dated April 18, 1994, is not binding on Citizens Bank & Savings and the confirmation of the plan.

The Court is of the opinion that the value of the collateral could not have changed from April 18, 1994, to July 21, 1994. The value determined by this Court in the April 18, 1994, Order was based upon the evidence presented at the hearing. The Court finds that the value of the collateral set forth in the Order dated April 18, 1994, is the value of collateral as of the effective date of the Third Amended Plan.

■ Citizens Bank & Savings also objected to the plan because the property that is to be surrendered by the debtor is "land locked". The Bank argues that it has no ingress or egress to a public road. The debtor responded by agreeing to give the Bank a right of way over his land, but the plan as filed did not provide for such. The plan must provide the Bank with a right of

**402**

ingress and egress to the property that is being surrendered.

■ The objection of White and Son Enterprises, Inc., is that the plan provides for payment of their claim in full, but still designates it as an unsecured claim. After review of the documents, the Court finds that White and Son Enterprises, Inc., has a secured lien on the debtor's real estate. The plan must recognize the indebtedness owed to White and Son Enterprises, Inc., as a secured debt and treat it as such.

■ The trustee's objection to the Third Amended Plan is that it fails to meet the "best interests of the creditors' test". 11 U.S.C. § 1225(a)(4). This means that the unsecured creditors would receive less through the Chapter 12 plan as they would in a Chapter 7 liquidation. The trustee argues that the debtor is not entitled to assert a homestead exemption as the surviving spouse of his deceased wife.[2]

The debtor's plan proposes to pay the unsecured creditors an amount equal to the equity he has in his home, which is allegedly $10,000.00. The debtor derived this sum based upon the following computation:

| | |
|---|---|
| Value of residence | $53,000.00 [3] |
| First State Bank Mortgage | − $10,475.25 |
| Debtor's homestead exemption | − $ 5,000.00 |
| Deceased wife's homestead exemption | − $ 5,000.00 |
| White and Son judicial lien | − $22,158.00 [4] |
| Total equity in home | $10,842.00 |

In support of his position, the debtor cites § 6–10–101 *Code of Alabama* (1975), which provides that

> [if] no exceptions are filed ... [to the] setting aside of the homestead exemption, the *title* to the real property so set aside shall vest in the surviving spouse and minors, share and share alike ... If all the real property left by the decedent in this state does not exceed in area or value the homestead allowed by law as exempt, *title* to all such property shall vest absolutely in the surviving spouse, the children ... (emphasis added).

The remainder of the provision states that the surviving spouse and minor children have exclusive possession of the real property until the surviving spouse's death and the children reach the age of majority, and that the homestead cannot be sold for division during this same time period.

The Court has reviewed this provision and does not agree with the debtor's position. This section of the *Alabama Code* only grants title of the homestead to the surviving spouse. It says nothing about a surviving spouse being entitled to an additional homestead exemption in bankruptcy.

■ Section 522(d) of the Bankruptcy Code sets forth the exemptions that a debtor is entitled to. However, Alabama "opted out" of the federal exemptions and requires a debtor to choose only those exemptions set out under the Alabama law. § 6–10–11, *Code of Alabama* (1975). Each resident of Alabama who files bankruptcy is allowed a $5,000.00 homestead exemption and a $3,000.00 personal property exemption. § 6–10–2; § 6–10–6 *Code of Alabama* (1975). *The appropriate date for determining bankruptcy exemptions is the date of the order for relief. In re Lindsey,* 94 B.R. 723 (Bkrtcy. S.D.Ala.1988); *In re Rester,* 46 B.R. 194 (S.D.Ala.1984).

In the present case, on the day the petition was filed, the debtor was entitled to his $5,000.00 homestead exemption and his $3,000.00 personal property exemption. The debtor may not claim an exemption as the surviving spouse of his deceased wife because that exemption was not available to him on the day the order for relief was entered.

The Court is of the opinion that the debtor's Third Amended Plan fails to meet the "best interest of the creditors" test. Under the proposed plan, the unsecured creditors will receive a pro rata share of $10,842.00. Under a Chapter 7 liquidation, the unsecured creditors would receive a pro rata share

---

**2.** The debtor's wife was not a joint debtor in bankruptcy and died after the order for relief was entered.

**3.** The debtor's home is the only real property that has equity.

**4.** This sum represents a judgment of $17,978.84 plus interest for a period of sixty months.

based upon the equity in the debtor's home ($15,842.00). The equity in the home increased because the Court will not allow the debtor to claim a $5,000.00 exemption as a surviving spouse. The trustee's objection to the Third Amended Plan is due to be sustained.

It is therefore ORDERED, ADJUDGED AND DECREED that the objections filed by Citizens Bank and Savings, White and Son Enterprises, Inc., and the trustee be and hereby are SUSTAINED, and confirmation of the debtor's Third Amended Plan is DENIED.

Done and Ordered.