In re Laura Fredrika PLUMA, Debtor.

Tax Collector for the County of San Diego, Appellant,

v.

Laura Fredrika Pluma; David L. Skelton, Chapter 13 Trustee, Appellees.

BAP No. SC–03–1098–BARYMA.
Bankruptcy No. 02–06930–B13.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 19, 2003.

Filed Dec. 4, 2003.

Timothy M. Barry, County Counsel of San Diego, San Diego, CA, for Tax Collector for the County of San Diego.

Brian M. Mahoney, American Debt Relief, San Diego, CA, for Laura Fredrika Pluma.

Before: BAUM,[1] RYAN and MARLAR, Bankruptcy Judges.

## OPINION

BAUM, Bankruptcy Judge.

The Tax Collector for the County of San Diego ("the County") filed an objection to debtor's chapter 13 plan. The plan (as modified) provided for interest on the County's secured claim at 4.3%. The County argued that the interest rate on its claim should be 10%. Following an evidentiary hearing, the bankruptcy court overruled the County's objection, found the appropriate interest rate to be 4.26%,

---

1. Honorable Redfield T. Baum, Bankruptcy Judge for the District of Arizona, sitting by designation.

and ultimately confirmed the debtor's plan. The County timely filed its notice of appeal and asks this Panel to reverse the interest rate determination of the bankruptcy court. At oral argument, counsel for the County informed the Panel that the debtor, in connection with refinancing her home, had paid the delinquent taxes in full. We reverse and remand.

## FACTS

Debtor filed her chapter 13 case on July 16, 2002. On August 16, 2002, the County filed an objection to debtor's chapter 13 plan because the plan did not provide for payment of the statutory interest rate (18%) on the County's secured claim for unpaid real property taxes. At the initial hearing on confirmation of the debtor's chapter 13 plan, the County informed the court that it would not claim that it was entitled to the statutory rate of interest but rather that the County was entitled to an appropriate market rate of interest, which it argued was 10%. The Court continued the matter for an evidentiary hearing. The debtor filed an amended plan on November 20, 2002 proposing to pay the County tax arrears with interest at 4.3%. At the continued hearing, experts for both the debtor and the County testified. At the conclusion of the hearing, the Court took the matter under advisement. On February 11, 2003, the Court issued its Memorandum Decision and determined that the appropriate market rate of interest on the County's claim was 4.26%. *See In re Pluma*, 289 B.R. 151, 157 (Bankr.

S.D.Cal.2003). On February 20, 2003, the County filed its Notice of Appeal. The Court entered its order confirming debtor's amended chapter 13 plan on February 25, 2003. Just before oral argument on this matter, counsel informed the Panel that the Debtor had refinanced her home and paid the delinquent taxes in full.[2]

## ISSUE

The sole issue on appeal is whether the bankruptcy court erred in determining that 4.26% was the appropriate rate of interest that would provide the County with payments having a present value equal to the allowed amount of its claim.

## STANDARD OF REVIEW

■ We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *In re Fowler*, 903 F.2d 694, 696 (9th Cir.1990); *In re Camino Real Landscape Maint. Contractors, Inc.*, 818 F.2d 1503, 1505 (9th Cir.1987).

## DISCUSSION

By statute, the County's $1,932.03 claim for delinquent property taxes, penalties and interest is secured by a first position lien on debtor's residence pursuant to California Revenue & Taxation Code Section 2192.1. The residence is valued by the debtor at $260,000. The property is also subject to two deeds of trust in the amounts of $179,903[3] and $3,000.

---

2. The issue of mootness was never raised at oral argument other than both parties indicating that they wanted to proceed with the appeal. We conclude that even though the County's claim was paid, we have jurisdiction over the appeal. There was some discussion as to whether the refinance was done with or without court approval and regarding the amount that the County was actually paid. The panel was concerned with whether the County received more money than it was entitled to receive. In that estate funds may have been used to pay the County's claim, the bankruptcy court may want to address whether the County was overpaid on its claim.

3. The debtor's amended plan provided for payment of mortgage arrears with interest at 10%.

As a secured creditor receiving deferred payments on its claim, the County is entitled to interest so that the total amount of the payments received have a present value equal to the amount of its claim on the date of filing. Sections 1325(a)(5)(B)(i) and (ii) of the Bankruptcy Code provide:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

\* \* \* \* \* \*

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5)(B).

■ Although bankruptcy courts generally agree that creditors should receive interest on deferred tax payments, they have not always agreed on the proper method for determining the appropriate rate. *In re Welco Indus., Inc.,* 60 B.R. 880, 882 (9th Cir. BAP 1986). This Panel has rejected the use of a "blanket approach" such as the prime rate plus 3 percentage points for short term loans and prime plus 4 percentage points for long term loans (greater than 5 years). *See In re Patterson,* 86 B.R. 226, 228 (9th Cir. BAP 1988). Use of an interest rate set by statute for delinquent tax payments has also been rejected. *See Camino Real,* 818 F.2d at 1505. Rather, the Ninth Circuit has held that a case by case approach should be used to determine an appropriate market rate of interest. *Id.* at 1508. "[T]he court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration

of the quality of the security and the risk of a subsequent default." *Id.* at 1505 (quoting 5 *Collier on Bankruptcy* ¶ 1129.03[4][f][i] (15th ed.1987)).

The bankruptcy court and the parties agree that the County is entitled to a "market rate" of interest on its claim. But, as stated above, the debtor's amended plan proposed to pay 4.3%, the County argued that it was entitled to 10%, and the bankruptcy court determined the appropriate rate to be 4.26%.

Two different approaches have developed to determine the market rate. The first approach requires the court to determine the current market interest rate for similar loans within the region (the "Similar Loan Approach"). More specifically, the court sets the market rate by taking testimony on current market rates regarding loans for the length of time involved and secured by the type of property involved. *Fowler,* 903 F.2d at 697.

The second method for determining the appropriate market rate involves the use of a formula. Under this approach, the court starts with a base rate (either the prime rate or the rate on treasury notes) and adds a factor based on the risk of default and the nature of the security (the "Formula Approach"). The Formula Approach requires the court to assess the risks associated with a given debtor and the security associated with a specific debt, but evidence of market interest rates for similar loans is still relevant in arriving at the appropriate risk factor. *Id.* at 698. Under either method, the goal remains to arrive at a "market rate" of interest.

In this case, the bankruptcy court heard testimony from the parties' experts relevant to both approaches. The County's expert testified that he arrived at the market rate using the "Similar Loan Ap-

proach." The debtor's expert testified that he used the "Formula Approach."

The bankruptcy court considered the testimony, cross-examination and arguments of both parties and determined that the "Formula Approach" was the more accurate of the two methods for this case. The court criticized the "similar loan" approach as "unnecessarily unwieldy and arbitrary because it examines market rates in a hypothetical market." *Pluma*, 289 B.R. at 155. The court pointed out that the "similar loan" analysis by the County's expert was based on a thirty-year fixed rate mortgage in the amount of $150,000 with an 80% loan to value ratio. The debtor's obligation to the County differs in that it is a much smaller amount, will be paid in a relatively short time, and "has unique aspects that make comparisons to similar loans in the region difficult." *Id.*

■ This Panel finds the bankruptcy court's decision to reject the Similar Loan Approach and to employ the Formula Approach perfectly acceptable. Thus, our review turns on whether the bankruptcy court applied the Formula Approach correctly. As stated above, in employing the Formula Approach, the analysis must start with a base rate and then add an amount based on the risk of default and the nature of the security (the "Risk Factor"). This requires the bankruptcy court to assess the risks associated with a given debtor and the security associated with a specific debt. Evidence of market rates for similar loans is also relevant in arriving at the appropriate Risk Factor.

■ In this case, the court adopted the analysis of the debtor's expert. The debtor's expert opined that the risk free rate was 4.25%, the prime interest rate. He further opined that the risk of loss of the collateral would only occur in rate cases thereby making the Risk Factor here .01%. Thus, the expert concluded that the

market rate of interest should be 4.26%. The expert admitted on cross-examination that he did not consider any factors that might be relevant in determining whether there was a risk of default and that the debtor's financial condition was not relevant to his analysis. The court stated that even though "few lenders would lend to borrowers with the characteristics of the debtor, in reality the risk of default, one aspect of the 'risk factor' is de minimis given the chapter 13 process." *Id.* at 155.

The court further stated that it "views the two aspects of the risk factor—the nature of the security and the risk of default—at two different ends of the spectrum for purposes of the risk factor analysis. In the circumstances of this case, because the risk of default is so slight, more weight properly goes to analyzing the nature of the security involved." *Id.* at 156. In assessing the "nature of the security," the court went on to find that "the risk involved with the County's secured position in the Property, is also slight." *Id.* at 156–57. This conclusion was based on the fact that the debtor's tax obligation was so small relative to the value of the property and the statutory first position above all other lienholders. *Id.*

We find that the court erred in its application of the Formula Approach. First, the bankruptcy court erred in finding there was essentially no risk of default. The court also erred in affording overwhelming weight to the nature of the security while essentially eliminating the risk of default from the calculation of the Risk Factor. The effect of this error is that while the court considered the risk attached to the security, it failed to weigh debtor's risk of default in calculating the Risk Factor.

The County's expert provided undisputed testimony as to the risk of default in his

analysis of the Risk Factor. However, the court chose not to consider any of the negative financial attributes of this debtor relating to the risk of default. Other elements that should have been included in the court's analysis of the risk of default are that (1) this debtor previously filed a chapter 13 case that was dismissed, (2) the debtor's income is, in part, dependent on receiving $1,465 per month from her 21–year old son ($465) and her 68–year old father ($1000), (3) there was a pending foreclosure on the debtor's residence, and (4) the debtor had already fallen behind in her plan payments. (Although the debtor did cure her delinquent payments just before the confirmation hearing). The bankruptcy court also stated that risk of default is minimized in a chapter 13 case because of protections inherent in the process that insure that a creditor gets paid. There is nothing in the record to support this conclusion. In fact, in many districts, the default rate among chapter 13 debtors is significant, resulting in many chapter 13 cases either being converted to chapter 7 or dismissed. Here, there is a risk of default, and as such, an appropriate factor must be added to the risk free rate to compensate for such risk of default.

Considering now the other component of the Risk Factor, the quality of the security, we generally agree with the bankruptcy court's conclusion that the risk to the security here is slight. However, as found by the bankruptcy court, there is some risk to the security. The court accepted the debtor's expert opinion that the risk was .01%. Although this is an exceptionally minimal risk, the court has some support for its finding so the finding is not clearly erroneous.

Without appropriate consideration of the risk of default, the bankruptcy court could not arrive at a proper Risk Factor to add to its base rate of interest. We therefore remand to the bankruptcy court for further proceedings consistent with this disposition.

## CONCLUSION

We reverse the interest rate determination of the bankruptcy court and remand. On remand, the court should consider the debtor's risk of default in determining a proper Risk Factor to add to its base interest rate.